STANDARD INDUSTRIES, INC., a corporation, and Metropolitan Paving Co., Inc., a corporation, Plaintiffs-Appellants,

v.

MOBIL OIL CORPORATION, a corporation, et al., Defendants-Appellees and Cross-Appellants.

Nos. 71-1115-71-1119.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 10, 1972.

Decided March 14, 1973.

Rehearing Denied April 27, 1973.

Bert Barefoot, Jr., and John Anthony Claro, Oklahoma City, Okl. (Edward H. Moler, Barefoot, Moler & Claro, and Joseph A. Claro, Oklahoma City, Okl., of counsel, on the brief), for plaintiffs-appellants.

A. Duncan Whitaker, Washington, D. C. (Edward F. Howrey, Michael M. Levy, and Charles F. Rice, New York City, S. M. Groom, Jr., Oklahoma City, Okl., Howrey, Simon, Baker & Murchison, Washington, D. C., of counsel, on the brief), for defendant Mobil Oil Corp., appellee and cross-appellant.

John J. Runzer, Philadelphia, Pa. (John A. Ladner, Tulsa, Okl., Edith G. Laver, Pepper, Hamilton & Scheetz, Philadelphia, Pa., on the brief), for defendant Sunray-DX Co., appellee and cross-appellant.

Coleman Hayes, Oklahoma City, Okl. (Willard P. Scott, Carl G. Engling, Monnet, Hayes, Bullis, Grubb & Thompson, Oklahoma City, Okl., on the brief), for defendant Kerr-McGee Corp., appellee and cross-appellant.

Richard B. McDermott, Tulsa, Okl. (Boesche, McDermott & Eskridge, Tulsa, Okl., and S. E. Floren, Bartlesville, Okl., on the brief), for defendant Phillips Petroleum Co., appellee and cross-appellant.

Before LEWIS, Chief Judge, Mc-WILLIAMS, Circuit Judge, and THEIS, District Judge.

McWILLIAMS, Circuit Judge.

This is a civil antitrust action brought by two corporations to recover damages incurred when they purchased liquid asphalt, to be utilized in the construction of roads, highways, runways and the like, at a "rigged" price in excess of fair market value, such price rigging allegedly having been the result of an unlawful combination and conspiracy in restraint of trade in violation of the provisions of the Sherman Act and the Clayton Act. 15 U.S.C. § 1 et seq. The defendants named in the complaint were numerous petroleum refiners and marketing entities which produced and sold liquid asphalt as a by-product of the crude oil cracking process.

The two corporations which instituted the proceedings are Standard Industries, Inc., a Delaware corporation, and Metropolitan Paving Company, Inc., an Oklahoma corporation, both general construction contractors with the former headquartered in Tulsa, Oklahoma, and the latter in Oklahoma City, Oklahoma.

As indicated, the defendants were various petroleum refiners and marketing entities located in Oklahoma and Kansas and initially were some twelve in number. Settlement was made with certain defendants prior to trial. Upon trial, the jury returned a verdict in favor of one defendant, Skelly Oil Company of El Dorado, Kansas, and against the four remaining defendants. Those four are: (1) Mobil Oil Corporation, which operated a refinery in Augusta, Kansas; (2) Sunray DX Oil Company, which operated a refinery in Tulsa, Oklahoma; (3) Kerr-McGee Corporation, which operated refineries at Wynnewood and Cushing, Oklahoma; and (4) Phillips Petroleum Company, which operated refineries at Okmulgee, Oklahoma, and at Kansas City, Kansas.

An eight-week trial culminated in the submission to the jury of a series of special interrogatories. The jury found, *inter alia*, that the four defendants had conspired to fix the price of liquid asphalt purchased by plaintiffs in Oklahoma from January 1962 to December 1966; that plaintiffs had suffered damages by way of an "overcharge" during the existence of the conspiracy; and that none of the "overcharge" had been "passed-on" by either of the plaintiffs.

Based, then, on the jury's various answers to the special interrogatories, the trial court entered a judgment in the sum of $133,684.06, together with the sum of $42,000 for attorney's fees, plus costs in the amount of $3,550.22, in favor of Standard and against the four petroleum companies which the jury found guilty of antitrust violations. As concerns Metropolitan, judgment was entered in its favor and against the same four companies in the sum of $286,128.-01, together with the sum of $84,000 for attorney's fees, plus costs in an amount of $7,100.44. In sum, judgment was entered in favor of the two plaintiffs against the four petroleum companies, jointly and severally, in a total amount of $556,462.73, such sum taking into account previous settlements made with other defendants prior to trial. All parties now appeal.

Standard and Metropolitan complain here about the amount of their judgment, and seek a new trial limited to the issue of damages. The four appealing defendants, i. e., Mobil, DX, Kerr-McGee, and Phillips, on a variety of grounds seek a new trial limited to the issue of liability. These wide-ranging grounds of alleged error will be grouped into two categories: Alleged Pre-Verdict Error and alleged Post-Verdict Error.

## ALLEGED PRE-VERDICT ERROR

1. Treble Damage Instruction.

Section 15 of 15 U.S.C. provides that any person injured by reason of anything forbidden in the antitrust laws may sue therefor "and shall recover threefold the damages by him sustained,

and the cost of suit, including a reasonable attorney's fee." In regard to the matter of damages, the trial court instructed the jury as follows:

"* * * If you should find, from a preponderance of the evidence in this case, that plaintiff is entitled to recover, your verdict will be for only such amounts as you shall find from the evidence in the case is reasonably necessary to compensate the plaintiff for damages proximately caused by one or more of the violations of the Federal antitrust laws, which the plaintiff has alleged. *You will not treble that amount, nor will you include any sums for costs of suit, or for a reasonable attorney's fee, since that is no part of the jury's function. That is a question for the court, in the event the jury return a verdict in favor of the plaintiff for actual or compensatory damages.*" (Emphasis added.)

The plaintiffs contend that the giving of the aforesaid instruction constituted reversible error because such was "inherently unfair" in that it placed on the plaintiffs the burden of explaining why they should ultimately recover three times their actual damage and, in practical effect, necessarily caused the jury to adjust downward its damage award.

In thus arguing, plaintiffs rely on our recent case of Semke v. Enid Automobile Dealers Association, 456 F.2d 1361 (10th Cir. 1972), decided by us after the trial of the instant case. In *Semke*, after recognizing that there was a split of authority on the matter, we held that it was error to give an instruction which informed the jury that its damage award *would* be trebled by the court, but that in the context of that case it was only harmless error. We adhere to the rule of *Semke*, but here, as in *Semke*, under the circumstances any error is deemed harmless.

In pre-trial newspaper publicity of considerable proportions, the jury panel was without doubt made aware of the fact that this was a treble damage ac-

tion. Such publicity included articles published in the local Oklahoma newspapers between 1966 and 1969 concerning not only the nature of the claim asserted in the instant case, but also articles relating to the antitrust action brought by the State of Oklahoma in regard to the State's purchases of the same types of liquid asphalt. Many of these articles stated that the suits involved amounts which were triple the amount of damages allegedly suffered. Furthermore, in closing argument there was some comment by counsel concerning the treble damage aspect of the case, although such was said to be in anticipation by counsel that the trial court would instruct on the matter. And in the instructions other than the particular part here complained about, reference was made that under the Clayton Act the injured party should recover "threefold the damages by him sustained, and the cost of the suit, including a reasonable attorney's fee."

In addition, as will later be more fully developed, the witness Kavanaugh, president of Metropolitan, in violation of an order of court, in a voice inaudible to the court and counsel, but audible to the court reporter and at least some jurors, volunteered that he had already incurred expenses in the sum of $150,000.

It was in this general setting, i.e., considerable pre-trial publicity, some discussion about treble damages in closing argument, and misconduct by the witness Kavanaugh, that the court felt constrained to affirmatively instruct the jury that in the event it found for the plaintiffs it should award the plaintiffs their actual damages, and that the matters of trebling, costs and attorney's fees were "no part of the jury's function" and were "questions" for the court. Under such circumstances, we conclude that the giving of the instruction in question did not constitute reversible error. Repeating, the jury was correctly instructed as to the damages that could be awarded and then simply informed that the other matters, i.e., trebling, costs, and attorney's fees were

"questions" for the court. We perceive no prejudice to the plaintiffs from the instructions thus given.

█ Nor are we convinced by the further argument on this point that the jury did in fact reduce its damage award by fixing plaintiffs' damages at exactly one-third what the evidence indicated it was entitled to. This assumes that the plaintiffs' evidence compelled the jury to assess their damage at the rate of 3¢ per gallon of liquid asphalt purchased. We do not view the evidence as compelling any such result. The extent of plaintiffs' damages was, as were most of the issues in the case, disputed issues and the jury's monetary award finds support in the record.

### 2. "Passing on" Instruction.

█ As above indicated, the two plaintiffs were general construction contractors and as an incident to their business both used so-called "asphaltic concrete," which is made by mixing aggregates, such as sand, crushed rock, and the like, with liquid asphalt. The liquid asphalt was purchased by the plaintiffs from certain of the defendants and such, of course, forms the root of this entire controversy. In this regard, one of the defenses raised by the defendants was that the plaintiffs had merely "passed on" to those with whom the plaintiffs dealt any overcharge suffered by plaintiffs at the hands of any of the defendants. The instruction given the jury on this particular matter is set forth below.[1]

By its answer to special interrogatories, the jury determined that neither of the plaintiffs had "passed on" any overcharge. The plaintiffs now argue that the giving of the instruction on "passing on" was error under Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U. S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), and that notwithstanding the finding by the jury that there was no "passing on," the very giving of the instruction tended to prejudice the plaintiffs' entire case in the eyes of the jury. We disagree.

In the first place, it requires a degree of clairvoyance that we do not possess to conclude that the jury's finding that the plaintiffs did *not* pass on the overcharges somehow prejudiced the plaintiffs' entire case in the eyes of the jury. Such reasoning we do not follow. *See* Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625 at 629, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); Bass v. Dehner, 103 F.2d 28, at 34 (10th Cir. 1939), cert. denied, 308 U.S. 580, 60 S.Ct. 100, 84 L.Ed. 486 (1939).

Furthermore, as we read Hanover, 392 U.S. at 494, 88 S.Ct. at 2232 the Supreme Court did not completely rule out passing-on as a defense in an action of this nature. Indeed, the court recognized "that there might be situations—

---

1. "INSTRUCTION NO. 27

"PASS–ON DEFENSE: As one of the defenses herein the defendants contend that even though the jury should find that a conspiracy existed which resulted in artificially high prices for liquid asphalt the plaintiffs nonetheless may not recover in this case because of their failure to show that they were thereby injured in their business or property. In this connection it is alleged by defendants that whatever price the plaintiffs paid for asphalt was shifted or 'passed-on' to those with whom plaintiffs contracted and by reason thereof the contractors, as middlemen, suffered no loss whatever.

"In your consideration of this issue you are told that in cases of this nature the 'pass-on' defense, while sometimes proper, has rather limited application and is generally available only to a 'cost-plus' contractor or to a middleman who buys a product then resells same in unchanged form to a consumer under such condition that the original cost and handling charges can be traced with a fair degree of certainty. If, while in the hands of the middleman, the product is processed so as substantially to lose its identity and form and the processing costs are incapable of exact calculation, the defense of 'pass-on' becomes unavailable. The burden rests with defendants to prove the defense of 'pass-on' as is heretofore stated in these instructions."

for instance, when an overcharged buyer has a pre-existing 'cost-plus' contract, thus making it easy to prove that he has not been damaged—where the considerations requiring that the passing-on defense not be permitted in this case would not be present." In our view, the instruction given does not offend *Hanover* and was narrowly drawn so as to be in accord with the foregoing language from *Hanover*. For these reasons, we find no error in the giving of this instruction.

### 3. Peremptory Challenges.

 The trial court granted each of the two plaintiffs three peremptory challenges, making a total of six for the two, and granted each of the five defendants who went to trial two peremptory challenges, to be exercised separately, making a total of ten challenges for the defendants. The plaintiffs now complain that granting to them a total of six peremptory challenges, as contrasted to the ten granted the defendants, constitutes reversible error, even though the jury ultimately selected found in their favor and awarded substantial damages. It is difficult for us in this situation to find any prejudice to the plaintiffs. Also, in our view prejudice is not shown by pointing out, by way of hindsight, jurors whom the plaintiffs would have peremptorily challenged if they had been allotted ten challenges, instead of six. Be that as it may, we find no error on the part of the trial court in its order regarding peremptory challenges.

Section 1870 of 28 U.S.C. initially provides that each party in a civil case shall be entitled to three peremptory challenges. Such was afforded the two plaintiffs, though each of the five defendants did not get three peremptory challenges, only two. That same statute also provides that multiple plaintiffs or defendants "may" be treated as a single party or the trial court "may" allow additional peremptory challenges and "may" permit them to be exercised either jointly or separately. By use of

the word "may," we have held that this latter provision confers a judicial discretion on the trial court. John Long Trucking, Inc. v. Greear, 421 F.2d 125 (10th Cir. 1970). In the instant case, we find no abuse of that discretion. See Albina Engine and Machine Works, Inc. v. Abel, 305 F.2d 77 (10th Cir. 1962).

*See also* Nehring v. Empresa Lineas Maritimas Argentinas, 401 F.2d 767 (5th Cir. 1968), cert. denied, 396 U.S. 819 (1969), 90 S.Ct. 55, 24 L.Ed.2d 69, where it was held that the plaintiff did not have a *right* to the same number of peremptory challenges as granted multiple defendants.

### 4. Evidence of Alleged Conspiracies Involving Sales of Liquid Asphalt in Kansas and Missouri.

 By answer to a special interrogatory, the jury determined that the four appealing defendants, i.e., Mobil, DX, Kerr-McGee, and Phillips, had conspired to fix, maintain and stabilize the price of liquid asphalt purchased by the plaintiffs in Oklahoma. As a part of their case, the plaintiffs, over objection, introduced evidence that the conspiracy in question did not respect state boundaries and that its effect was felt in Kansas and Western Missouri to the end that there was price fixing by certain of these defendants, and others, in those areas, as well as in Oklahoma. Expert testimony adduced by the plaintiffs was to the effect that the relevant economic market included not only Oklahoma, Kansas and Western Missouri, but included also such states as Nebraska, South Dakota, Iowa, Minnesota, and Wisconsin.

It was an integral part of plaintiffs' theory of the case that the Oklahoma refiners agreed not to market in Kansas, and that the Kansas refiners in turn agreed not to market in Oklahoma, to the end that the barrier between these two states was described by some as being a veritable "Berlin Wall," through which liquid asphalt did not pass from one state to the other, although *other* petroleum products flowed freely be-

tween the two states. And as the culmination of the conspiracy, the price for liquid asphalt in Oklahoma, according to the plaintiffs, was then set artificially high to the end that bids by refiners to both the state and private contractors were invariably identical and constant in the price bid. Similarly, in Kansas the Kansas refiners, free from Oklahoma competition, set their price for their liquid asphalt sold in Kansas.

As concerns Western Missouri, it was plaintiffs' theory of the case that the Kansas and Oklahoma refiners "cooperated" in this area and divided up the market at prices mutually agreed upon.

Regarding Nebraska, South Dakota, Iowa, Minnesota, and Wisconsin, plaintiffs contended that the defendants and the other coconspirators did engage in real price competition in those areas. And in our view of the record, there is evidence, both direct and circumstantial, to support this general theory of the case.

Upon trial, defendants objected strenuously to the introduction of any evidence pertaining to the existence of any conspiracy involving any defendant extending into Kansas or Western Missouri. Such evidence was said to be irrelevant and highly prejudicial. These objections were overruled and the defendants now assign such ruling as error necessitating a new trial on the issue of liability only. We perceive no error in this particular regard.

The evidence of the activities of these defendants, and others, in Kansas and Missouri was a part of an overall scheme and had relevance and probative value as tending to circumstantially prove the particular facet of the conspiracy which ended in price fixing in Oklahoma operating to the detriment of the plaintiffs. Noerr Motor Freight v. Eastern Railroad Presidents Conference, 155 F.Supp. 768 (E.D.Pa.1957), aff'd per curiam, 273 F.2d 218 (3d Cir. 1959); rev'd on other grounds, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), contains pertinent comment on this particular matter. In that case, the trial court declared as follows:

"Because of the magnitude and importance of the case the Court permitted great latitude in the introduction of evidence. The trial court in any antitrust case has wide discretion in the admission or exclusion of cumulative and collateral evidence * * *. The evidentiary problems arising at trial may be placed in six distinct categories. The first relates to the admission into evidence, over the strenuous objection of the defendants, of proof of activities in the railroad-Byoir campaign which occurred outside of Pennsylvania. Since the conspiracy was not originated in Pennsylvania, the proof of outside activities was important, not only to show its formation but to show its method of operation, all of which had a great bearing on the fundamental question of intent and injunctive relief, if an illegal conspiracy actually existed. The complaint charged an overall conspiracy in the whole of the northeastern part of the United States. *Because the plaintiffs limited themselves to proof of damages only within the State of Pennsylvania, the defendants contend that plaintiffs should be likewise limited in proof of the conspiracy. Such result, of course, does not follow.* * * * " (Emphasis added.)

Counsel contend that our holding in United States v. Wilshire Oil Company of Texas, 427 F.2d 969 (10th Cir. 1970), cert. denied, 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59 (1970), was that the Missouri and Kansas conspiracies were each distinct from the other and that accordingly each was necessarily distinct from any Oklahoma conspiracy to the end that evidence of either a Kansas or Missouri conspiracy would not be competent evidence of an Oklahoma conspiracy. Such, in our view, does not necessarily follow. The fact that in *Wilshire* we held that the Kansas and Missouri conspiracies were separate and distinct, to the end that *Wilshire* in the Kansas criminal antitrust proceeding could not avail itself

of the plea of double jeopardy based on its prior conviction in the Missouri criminal proceeding, does not resolve the present matter. Even assuming that the Kansas, Missouri and Oklahoma conspiracies were distinct, such does not mean that evidence of the first two is inadmissible in a case grounded on purchases made by the plaintiffs in Oklahoma. Certainly on the record before us such were so interrelated that evidence of one was some evidence of the other. *See* American Medical Ass'n v. United States, 76 U.S.App.D.C. 70, 130 F.2d 233 at 251–252 (1942), aff'd, 317 U.S. 519, 63 S.Ct. 326, 87 L.Ed. 434 (1942), and Greater New York Live Poultry Chamber of Commerce v. United States, 47 F.2d 156 at 159 (2d Cir. 1931), cert. denied, 283 U.S. 837, 51 S.Ct. 486, 75 L. Ed. 1448 (1931).

In short, then, the jury in our view was entitled to know the full story and the trial court did not err in refusing to limit the plaintiffs to proof of events occurring within the territorial limits of the State of Oklahoma. *See also*, for example, Kansas City Star Company v. United States, 240 F.2d 643 (8th Cir. 1957), cert. denied, 354 U.S. 923, 77 S. Ct. 1381, 1 L.Ed.2d 1438 (1957), where it was declared, at 650, that when intent is an issue, as it was here, it has always been deemed proper, in civil or criminal antitrust proceedings, to introduce "evidence of other acts and doings of the party, of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judgment."

5. Admitting Evidence to the Effect that the State of Oklahoma was Interested in Plaintiffs' Claim.

■ The State of Oklahoma had previously brought a civil antitrust action against DX, Kerr-McGee, and Phillips seeking treble damages for liquid asphalt purchased by it. Trial in that proceeding ended in a substantial judgment for the State. There was no direct appeal, as such, from that judgment, the matter being settled, although one facet of the

case was later before us in State of Oklahoma ex rel. Wilson v. Blankenship, 447 F.2d 687 (10th Cir. 1971), cert. denied, 405 U.S. 918, 92 S.Ct. 942, 30 L. Ed.2d 787 (1972).

The trial court's ruling in the instant case was that there would be "no mention" of the anti-trust claim successfully asserted by the State. However, in the present proceeding, the plaintiffs did call as its witnesses numerous state officials who had testified in the earlier trial. Additionally, certain exhibits used in the earlier trial were also marked and used in the instant one. The defendants now claim this to be error, arguing that the jury was necessarily apprised of the successful antitrust claim of the State, and that such inevitably worked to their detriment. This argument is untenable. Certainly the plaintiffs were not precluded from calling as their witnesses various state officials and using exhibits prepared by them for the earlier case, assuming the witnesses were otherwise competent and the exhibits otherwise relevant and material to the issues in the present case.

6. Admission of Inadmissible Evidence.

■ Defendants assert the case should be reversed because the trial court admitted, over objection, evidence which was allegedly inadmissible and highly prejudicial. In thus arguing, counsel includes such items as: (1) Permitting the plaintiffs' two economists to testify as to the ultimate issue in the case, i. e., the existence of a conspiracy on the part of the defendants; (2) admitting a letter which tended to impeach the testimony of the president of an asphalt-producing refinery which marketed through Mobil, the witness having previously been called by Mobil as its witness, when no proper foundation had been laid; (3) permitting the introduction of hearsay evidence, and the like.

We do not propose to get into any extended discussion of evidentiary matters such as those enumerated above. We would note, in passing, that all of the

economists who testified upon trial, two being called by the plaintiffs and three by the defendants, expressed their opinions as to the "competitive" or, as the case may be, the "noncompetitive" nature of the liquid asphalt market and some no doubt did come close to giving an opinion as to whether there was or was not a conspiracy. However, such is not necessarily error. As early as New York Life Insurance Co. v. Doerksen, 64 F.2d 240 (10th Cir. 1933), and Francis v. Southern Pac. Co., 162 F.2d 813 (10th Cir. 1947), aff'd, 333 U.S. 445, 68 S.Ct. 611, 92 L.Ed. 798 (1948), we held that in a wide range of cases where the issue is one with which a lay juror is unfamiliar, expert testimony is not only admissible, but that, as was said in *Francis*, it was "not a well-grounded objection that the opinion elicited from the expert relates to the issue to be resolved by the jury."

Be that as it may, any possible error on the part of the trial court in the reception of evidence at trial would under the circumstances of this case be only harmless error. Fed.R.Civ.P. 61 specifically refers to error in the admission of evidence and declares that such error is not ground for ordering a new trial unless such be deemed "inconsistent with substantial justice." None of the alleged error with respect to the admission of evidence in the instant case meets that test. Moreover, in this regard it is difficult for us to believe that the outcome of an eight-week jury trial could turn on the allegedly inadmissible evidence here complained about by the defendants.

Finally, it has been held that in an antitrust case the trial court has a wide discretion in the admission or exclusion of cumulative or collateral evidence. Noerr Motor Freight v. Eastern Railroad Presidents Conference, *supra,* citing, at 836, United States v. General Motors, 121 F.2d 376 (7th Cir. 1941), cert. denied, 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. 497 (1941), and Kansas City Star Company v. United States, 240 F.2d 643 (8th Cir. 1957), cert. denied, 354 U.S.

923, 77 S.Ct. 1381, 1 L.Ed.2d 1438 (1957). For all these reasons, then, we conclude that there was no reversible error committed by the trial court in any of its rulings on the admissibility of evidence.

7. Misconduct of Witness Kavanaugh.

A. J. Kavanaugh, president of Metropolitan, was called as a witness by the plaintiffs and was examined and cross-examined at great length. The trial court ruled that he could not testify as to the expense allegedly incurred by him in preparing and pressing his claim against the defendants. In violation of that order, Kavanaugh, apparently in an aside to the jury, did assert that he had borrowed $150,000 to pay his share of the expense incurred in pushing his claim against the defendants. This remark, which occurred simultaneously with an objection to a question posed to the witness, was not heard by court or counsel, but was recorded by the court reporter. The entire matter apparently came to light sometime later, at which time the trial court refused the defendants' request that a mistrial be declared. The defendants now assert that they are entitled to a new trial, presumably on the issue of liability only, because of this incident, which is said to have prejudiced their case to the extent that an instruction to disregard was insufficient to insure a fair and impartial trial. We disagree.

The matter of declaring a mistrial, or not, because of improper, voluntary statements of a witness varies according to the atmosphere of each trial. Beck v. Wings Field, Inc., 122 F. 2d 114 (3d Cir. 1941). Of necessity it is a matter peculiarly within the sound discretion of the trial judge. He is on the scene and is in a better position than we, as a reviewing court, in assessing the potentially prejudicial impact of conduct such as that ascribed to Kavanaugh. In the instant case, the trial judge was very concerned, and rightly so, with Kavanaugh's misconduct and its

possible effects, but felt, after holding a hearing *in camera* on the matter, it was not of such proportions as to necessitate declaring a mistrial. And our review of the record has disclosed nothing which would lead us to conclude that the trial judge abused his discretion in this regard. *See*, for example, Sanitary Milk Producers v. Bergjans Farm Dairy, Inc., 368 F.2d 679 (8th Cir. 1966).

8. *Insufficiency of Evidence as to Mobil and DX.*

■ Mobil and DX contend that there is insufficient evidence that either of them was involved in the conspiracy about which the plaintiffs complain to the end that a directed verdict should have been entered in their favor. These involve separate consideration.

DX was headquartered in Tulsa, Oklahoma, and the witness Metcalf, president of Standard, testified that from 1955 to 1966 Standard, which was also Tulsa based, had purchased over 15 million gallons of liquid asphalt from DX. There was evidence, both direct and circumstantial, that the price paid by Standard was fixed by DX at a figure which was identical and constant with the price charged by other Oklahoma refiners and that DX was a part of the conspiracy to maintain the price of liquid asphalt at an artificially high figure. In short, in our view there is sufficient evidence to sustain the jury's determination that DX was a party to the conspiracy that resulted in damage to these plaintiffs.

Mobil is in a slightly different situation. Though it was a defendant in the criminal indictments returned in Missouri and Kansas, it was not a defendant nor a named conspirator in the civil antitrust action brought by the State of Oklahoma, which has been referred to above. As indicated, however, it is plaintiffs' contention that as one facet of the overall conspiracy, Mobil, and other Kansas refiners, agreed to stay out of Oklahoma, in return for which the Oklahoma refiners agreed not to market their liquid asphalt in Kansas. There was evidence that during the years in question Mobil did not market, at least to any appreciable degree in Oklahoma, even though the price for liquid asphalt in Oklahoma was several cents per gallon higher than it was in Kansas. To counter such evidence, Mobil offered evidence of attempts to market its liquid asphalt in Oklahoma in 1966. By way of rebuttal, the plaintiffs then attempted to show that such belated efforts of Mobil were to forestall antitrust prosecution at a time when it was under investigation. In sum, our study of the record convinces us that there is sufficient evidence, both direct and circumstantial in nature, to support the jury's answer to a specific interrogatory that Mobil was indeed a party to the conspiracy in question.

## ALLEGED POST–VERDICT ERROR

Plaintiffs contend that the trial court erred in three particulars leading up to the entry of formal judgment, all occurring after the jury had returned its verdict. Before discussing those matters, let us first examine the verdict returned by the jury.

As indicated, the jury did not return a general verdict, but answered a considerable number of special verdict interrogatories. For example, by its answers the jury found that Mobil, DX, Kerr-McGee and Phillips, but not Skelly, had conspired to fix, maintain and stabilize the price of liquid asphalt purchased by the plaintiffs in Oklahoma and that such conspiracy unreasonably restrained interstate trade or commerce. By answer to another interrogatory, the jury found that the aforesaid conspiracy began in January 1962 and terminated in December 1966. Pursuant to direction, the jury then assessed the damages by dollar amount of Standard and Metropolitan, separately, for each year the conspiracy was in existence, i. e., 1962, 1963, 1964, 1965 and 1966. By answer to an interrogatory, the jury also found that the defendants had not "wrongfully, fraudulently or effectively concealed" the conspiracy from either of the plaintiffs.

We shall now examine the errors which allegedly occurred after the return of the jury's verdict leading up to the entry of judgment.

1. Refusal of Trial Court to Rule that the 4 Year Statute of Limitations Contained in 15 U.S.C. § 15b had been Tolled by 15 U.S. C. § 16(b).

Section 15b of 15 U.S.C. provides that an action brought under 15 U.S.C. § 15 is barred unless commenced within four years after the cause of action occurred. Anticipating that this statute of limitations might be pleaded by the defendants as one of their defenses, which it was, the plaintiffs in their complaint pleaded fraudulent concealment in an effort to toll the running of the statute. In this general connection, we would parenthetically note that the plaintiffs in their complaint alleged the existence of a conspiracy in restraint of interstate trade existing from 1954 through 1966, and sought damages for each of the thirteen years of conspiracy's existence. Also, by way of general background, plaintiffs instituted the present proceedings on December 1966 against all defendants except Kerr-McGee and Phillips, who were added as additional defendants in December 1967.

In line, then, with the pleadings the pre-trial order set forth as one of the issues in the case the question of whether there was fraudulent concealment by the defendants of their conspiratorial activities. As mentioned above, the jury found no such fraudulent concealment. Then some eight weeks after the jury's verdict, the plaintiffs attempted to inject into the proceeding the issue as to whether the four-year statute of limitations, if not tolled by fraudulent concealment, was nonetheless tolled by 15 U.S.C. § 16(b).

Section 16(b) of 15 U.S.C. provides, *inter alia,* that the institution by the United States of any civil or criminal antitrust proceeding shall suspend the running of the four-year statute of limitations in respect of every private right of action "based in whole or in part on any matter complained of in said proceeding * * *." In this regard, we are advised that the United States instituted a criminal antitrust proceeding in Missouri on July 22, 1965, wherein Mobil, Kerr-McGee and Phillips, along with many others, were named defendants and that the United States instituted another criminal antitrust proceeding in Kansas on April 5, 1966, again against Mobil, Kerr-McGee, Phillips, and others. If these criminal proceedings did suspend the running of the four-year statute of limitations, then the plaintiffs could recover damages for all five years the jury determined the conspiracy was in existence, i. e., 1962, 1963, 1964, 1965 and 1966. Jumping ahead, the trial court only allowed the plaintiffs damages for the years 1964, 1965 and 1966. The propriety of that particular determination will be examined in the next section, and for the moment we are only concerned with the correctness of the trial court's refusal to allow the plaintiffs to raise the provisions of 15 U.S.C. § 16(b).

The basic reason assigned by the trial court for refusing to allow the plaintiffs to raise the issue as to whether the criminal antitrust proceedings suspended the running of the four-year statute of limitations was that the request came too late. We agree. All parties were fully apprised by the pleadings of the case which were reflected in the pretrial order that the defendants were invoking the four-year statute of limitations. The plaintiffs sought to avoid the statute by alleging that there was fraudulent concealment by the defendants of their conspiratorial acts. The jury by its verdict found no such fraudulent concealment. Then, weeks after the return of the jury's verdict, the plaintiffs sought to inject a new issue into the case. Under such circumstances we agree with the trial court that the request came too late in the day.

In support of our disposition of this phase of the controversy, see such cases as National & Transcontinental Trading

Corp. v. International General Electric Co., Inc., 15 F.R.D. 379 (S.D.N.Y.1954). In that case, the Honorable Irving R. Kaufman, then a United States District Judge, declared as follows:

"Plaintiff contends that the pendency of the aforementioned action by the United States in the District Court for New Jersey suspended the statute of limitations for the period January 27, 1941, when the New Jersey action was commenced, until October 8, 1953, the date when final judgment was entered in favor of the United States. Nowhere however does the complaint allege that any of the allegations of the complaint are 'based in whole or in part on any matter complained of' in the New Jersey action. Such allegations are essential if the bar of the statute is to be avoided."

*See also* in this general connection Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 91 S.Ct. 795, 28 L. Ed.2d 77 (1971), where it was indicated that a trial judge would not err in rejecting an affirmative defense which was untimely presented.

2. Error by the Trial Court in Entering a So-called "Unitary Judgment."

■ The trial court determined that the judgment to be entered against the defendants would be joint and several and that it would include damages incurred during the "four years immediately preceding the joinder of Kerr-McGee and Phillips." As indicated above, the present action was commenced in December 1966 against Mobil and DX, along with ten other companies. However, Kerr-McGee and Phillips were not added as defendants till December 1967. By its determination that the four-year period of time would be the four years immediately preceding the joinder of Kerr-McGee and Phillips, the trial court limited the damage period to the calendar years of 1967, 1966, 1965 and 1964. By its answer to a special interrogatory, the jury had determined that the conspiracy terminated December 31, 1966. So, the judgment thus entered against the four defendants, jointly and severally, limited the plaintiffs' damages to those occurring during the three years of 1966, 1965 and 1964.

Plaintiffs now contend that such limitation was erroneous. They argue that under Fed.R.Civ.P. 20(a), judgment should have been entered for the plaintiffs according to their "respective rights to relief," and "against one or more defendants according to their respective liabilities." Hence, they say, there was no need to enter a so-called "unitary judgment."

In this general regard, the complaint is not so much that any judgment against Kerr-McGee and Phillips should be limited to damages occurring in 1966, 1965 and 1964. Rather, the problem arises in connection with Mobil and DX. The action against those two companies was instituted in December 1966, and the four years immediately preceding that date would include the calendar years of 1966, 1965, 1964 *and* 1963. As noted, *supra*, the jury did fix the damages sustained by the plaintiffs as a result of the conspiracy for that year, as well as 1962. As we understand plaintiffs' present position on this particular matter, it is suggested that a joint and several judgment against all four defendants for damages incurred in the years of 1966, 1965 and 1964, which was the judgment entered by the trial court, was proper, but that such would not, and should not, preclude a separate joint and several judgment against Mobil and DX only for plaintiffs' damages occurring in 1963. We agree.

As indicated, the action against Mobil and DX was commenced in December 1966, and the four-year statute of limitations would permit the plaintiffs to recover damages from those two companies for the years 1966, 1965, 1964 *and* 1963. We fail to see how the fact that the action against Kerr-McGee and Phillips was not commenced till a year later should inure to the benefit of Mobil and DX. This is not an instance of apportioning damages among joint tort-fea-

sors. Rather, we are simply awarding plaintiffs the damages decreed by the jury in its verdict in a manner consistent with Fed.R.Civ.P. 20(a).

In support of the foregoing, *see* Philco Corporation v. Radio Corporation of America, 186 F.Supp. 155 at 166 (E.D. Pa.1960), and Charles Rubenstein, Inc. v. Columbia Pictures Corporation, 176 F.Supp. 527 (D.C.Minn.1959), at 536, aff'd, 289 F.2d 418 (8th Cir. 1961). In *Philco,* it was held that in a civil antitrust action the trial court was not required to enter a single judgment against all defendants which would run for the shortest period of limitation applicable to any one defendant. And in *Rubenstein,* again a civil antitrust proceeding, it was contended that the trial court could not apportion damages among tort-feasors, but must hold all defendants jointly and severally liable. In rejecting that contention, the statute of limitations there in question was held to be "personal" to each individual defendant and that there was "no good reason why damages may not be assessed against the various defendants in the amounts and according to the liabilities established." We subscribe to such reasoning.

3. Refusal of the Trial Court to Grant Plaintiffs' Motion to Dismiss Kerr-McGee and Phillips.

 After it became apparent that the four-year statute of limitations was not to be tolled in any fashion, and after the trial court had further indicated that it proposed to enter a joint and several judgment against all four defendants for damages incurred in the years of 1966, 1965 and 1964, but not 1963, the plaintiffs in a tactical move designed to obtain a judgment for damages incurred in the year 1963, as well, moved to dismiss Kerr-McGee and Phillips from the case, hoping thereby to obtain a judgment against Mobil and DX for the four years of 1966, 1965, 1964 and 1963. Not surprisingly, Kerr-McGee and Phillips consented to the granting of the mo-

tion to dismiss them from the case and Mobil and DX objected. The trial court denied the motion, and the plaintiffs and Kerr-McGee and Phillips now assign that as error.

The motion to dismiss Kerr-McGee and Phillips coming after trial and moments before the entry of judgment was a matter lying within the sound discretion of the trial court and we find no abuse of that discretion. Fed.R.Civ.P. 15(a), 21 and 41(a)(2). See such cases as Shaffer v. Evans, *per curiam*, 263 F. 2d 134 (10th Cir. 1958), cert. denied, 359 U.S. 990, 79 S.Ct. 1119, 3 L.Ed.2d 978 (1959), where it was held that a motion by the plaintiff to dismiss after issue had been joined, but before trial, was addressed to the sound discretion of the trial court.

Accordingly, the judgments as entered are affirmed, but the case is remanded with direction that the trial court enter in favor of the plaintiffs a joint and several judgment against Mobil and DX only for damages incurred by the plaintiffs in the year 1963.