Charlotte MATTOCKS, as parent and natural guardian of Kevin Mattocks and Charlotte Mattocks, in her own right

v.

DAYLIN, INC.

v.

SULLCRAFT MANUFACTURING COMPANY, a corporation, t/d/b/a Anson Pajama Company

v.

DAN RIVER, INC.

Civ. A. No. 76–147 ERIE.

United States District Court, W. D. Pennsylvania.

April 17, 1978.

See also, D.C., 452 F.Supp. 512.

Andrew J. Conner, Erie, Pa., for plaintiff Mattocks.

John M. McLaughlin, Erie, Pa., for defendants Sullcraft and Daylin.

William R. Tighe, Pittsburgh, Pa., for defendant Daylin.

George I. Buckler, Pittsburgh, Pa., for defendant Sullcraft.

John M. Wolford, Erie, Pa., for defendant Dan River.

## OPINION

WEBER, Chief Judge.

Presently before the Court in the above-entitled action are plaintiff's motions for New Trial and Judgment N.O.V.  These

motions follow a jury verdict submitted on special interrogatories, finding no liability in a products liability case. The jury found that the product was not "unreasonably dangerous" and judgment on the verdict was entered for defendant Daylin, Inc.

Plaintiff's action against Daylin, the retailer of a pair of non-flame retardant boys cotton flannelette pajamas sold to plaintiff in November 1972, and worn by plaintiff son when accidentally ignited due to an unknown source was premised solely on § 402A, Restatement of Torts, 2d. Plaintiff withdrew liability counts based on breach of warranty and negligence prior to trial.

Defendant Daylin, admitted selling the subject pajamas and named Sullcraft Manufacturing Company as Third Party Defendant in the within proceedings alleging that Sullcraft manufactured and sold the cotton sleepwear. Sullcraft thereafter named Dan River, Inc., as a Fourth Party Defendant, alleging that Dan River supplied the 100% cotton flannelette used by Sullcraft to manufacture the pajamas subsequently sold to Daylin.

One basis for plaintiff's Motion for New Trial is the Court's failure to allocate properly and balance the number of peremptory challenges between plaintiff and defendants. Plaintiff was given three peremptory challenges while each party defendant was given three challenges. Plaintiff objected to this allocation, claiming that at least two of the defendants, i. e., Daylin and Sullcraft, were represented by the same counsel at trial and presented a united defense and therefore only three challenges should have been allocated between the two of them because of the identity of interest.

28 U.S.C. § 1870 controls the apportionment of challenges:

"In civil cases, each party shall be entitled to three peremptory challenges. Several defendants or several plaintiffs may be considered as a single party for purposes of making challenges, or the court may allow additional peremptory challenges and permit them to be exercised 'separately or jointly. . . ."

The use of the word "may" in the above-quoted section has been held to invest in the trial judge discretion in determining the proper allotment of challenges, with each "party" receiving three challenges. "The same statute also provides that multiple plaintiffs or defendants 'may' be treated as a single party or the trial judge 'may' allow additional peremptory challenges and 'may' permit them to be exercises either jointly or separately." *Standard Industries Inc. v. Mobil Oil Corp.*, 475 F.2d 220, 225 [10th Cir. 1973]; *Smith v. Pressed Steel Tank Co.*, 66 F.R.D. 429 [E.D.Pa.1975], *aff'd*, 524 F.2d 1404 [3d Cir. 1975].

Plaintiff claims that she has been prejudiced by the Court's allotment of challenges. Plaintiff in her brief claims that the jury was more favorably disposed to the interests of a 402A seller on the issue of whether or not this product and/or any product, was "unreasonably dangerous" at the time of its sale. In support of her position, plaintiff refers to the selection of an engineer for a local industry, who, counsel for plaintiff felt at the time of selection was favorably disposed to defendants' case. Plaintiff's counsel claims that he was unable to strike this juror, who later became jury foreman, because counsel felt that three other jurors not already stricken were more favorably disposed and oriented to defendants' position.

We have difficulty in perceiving any prejudice resulting to plaintiff. The jury selection process is not an exact science based upon immutable rules enabling counsel, upon brief contact with members of the panel and scant background information, to perceive which jurors will and will not be sympathetic to its position. Plaintiff has been unable to demonstrate that any other combination of jurors would have reached a different result. Prejudice is not shown by pointing out, by way of hindsight, jurors whom the plaintiff would have peremptorily challenged had she been allotted additional challenges. *Standard Industries, Inc.*, supra. Even under plaintiff's theory, the juror of whom she complains would not

have been stricken in any event because limiting defendants' challenges would not have prevented the juror from being selected, he being the sixth juror drawn.

The Court having found no prejudice or unfairness to the plaintiff with respect to the allocation of peremptory challenges, plaintiff's Motion for New Trial on this ground is denied.

Next plaintiff asserts that she is entitled to a new trial because of the Court's failure to instruct the jury according to Plaintiff's Point for Charge No. 3.[1] Plaintiff claims that Point for Charge No. 3 is in accordance with the opinion of the then Chief Justice Jones in *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 [1975] to the effect it was not plaintiff's obligation, in a case premised on 402A, Restatement of Torts 2d, to prove the product was "unreasonably dangerous." Plaintiff contends that the Court's charge—the jury must find that the product was "unreasonably dangerous" before they find liability—is contrary to Pennsylvania law.

In *Bair v. American Motors Corp.,* 535 F.2d 249, 250 [3d Cir. 1976] the Court of Appeals stated that the view expressed in the lead opinion by Chief Justice Jones in *Berkebile,* supra, was not the law of Pennsylvania and that it is proper to instruct a jury that a defective condition must be found to be unreasonably dangerous to user or consumer before a finding of liability. This conclusion was reached by the Court of Appeals because an opinion of the Pennsylvania Supreme Court representing the views of only two justices has no binding precedential value, according to Pennsylvania rule, and previous binding Pennsylvania precedent required the "unreasonably dangerous" charge. Accord, *Greiner v. Volkswagenwerk Aktiengeselleschaft,* 540 F.2d 85 [3d Cir. 1976].

▌ The *Bair* precedent is sufficient to dispose of plaintiff's motion for new trial because the "unreasonably dangerous" con-

cept remains a necessary part of the law of strict liability in Pennsylvania. See: *Bowman v. General Motors,* 427 F.Supp. 234 [E.D.Pa.1977]; *Beron v. Kramer Trenton Co.,* 402 F.Supp. 1268 [E.D.Pa.1975], aff'd mem., 538 F.2d 318 [3d Cir. 1976]. Therefore plaintiff's motion based on the Court's failure to charge according to Point No. 3 is denied.

Plaintiff also asserts as a basis for new trial the Court's failure to instruct according to plaintiff's Points for Charge Nos. 7 and 8. Plaintiff claims that Daylin was obligated to issue a conspicuous and eye-catching warning as to the risk and inherent limits of danger of the pajamas and that the jury could consider Daylin's failure to so warn on the issue of whether or not the product at the time of sale was in an unreasonably dangerous condition. Defendant Daylin on the other hand contends that it was under no obligation to warn with respect to issues not developed at trial and that plaintiff's own testimony reveals that she did not read tags placed on garments she purchased. Daylin also claims that, even assuming that Mrs. Mattocks would read a warning label placed on the garment itself or its wrapper, no evidence developed at trial indicates that this warning would have affected Mrs. Mattocks' judgment.

Upon cross examination, Mrs. Mattocks testified that she did not look at tags or labels when purchasing sleeping apparel for her children and therefore would not be aware of whether the labels listed the garment as fire retardant or otherwise. In response to defense counsel's inquiry whether she would read *any* labels accompanying said garments, plaintiff agreed that it was not her practice to read any labels save for the washing instructions. On redirect, plaintiff's counsel did not attempt to rehabilitate or have plaintiff explain or enlarge upon her testimony with respect to the failure to warn issue.

---

1. "3. A product, such as a pair of pajamas, is defective under Pennsylvania law, if it is not fit for all of the ordinary purposes for which the pajamas are sold. Establishing this ele-

· ment requires only proof in a general sense, and as understood by laymen, that something was wrong with the pajamas at the time they left the hands of the seller."

Plaintiff contends that the Court's refusal to instruct according to Plaintiff's Points for Charge Nos. 7 and 8 as a matter of law was in effect a directed verdict for Daylin on the duty to warn issue. The Court instructed that the jury could not find that the failure to warn was a substantial contributing cause of the injury suffered by Kevin Mattocks.

The Court denied plaintiff's "failure to warn" points for charge concluding that plaintiff would have failed to read any warning label and that the record did not support even the inference that, had an adequate warning accompanied the garment, plaintiff would have read it. Despite plaintiff's expert's testimony that an "adequate" warning must be a conspicuous label identifying the pajamas as highly flammable with the resulting effect of driving the product from the market, the Court determined that plaintiff had not established the factual causation necessary to secure an affirmative answer to Special Interrogatory No. 2.[2]

■ Pennsylvania law requires a warning issued by the seller of an inherently dangerous product to a purchaser where the danger is not readily ascertainable or plainly observable to the ordinary consumer. A failure to issue such a warning may result in a jury finding that a product is defective under 402A, Restatement of Torts, 2d, even though the product is manufactured strictly in accordance with design and specifications. *Greiner v. Volkswagenwerk Aktiengesellschaft*, 540 F.2d 85 [3d Cir. 1976], citing *Berkebile v. Brantly Helicopter (Berkebile I)*, 225 Pa.Super. 349, 311 A.2d 140 [1973].

Defendant claims that the court did not err in refusing to charge on the duty to warn because in view of the charge given and the jury's verdict, whatever danger was proved was within the ordinary contemplation of the ordinary user or consumer therefore there existed no need to provide a warning label.

Plaintiff claims that because she was never asked about what she would have done with respect to a warning had it been given, the jury could find that she did not look at or read statements accompanying garments other than washing instructions, but that she would have read and adhered to an adequate and conspicuous warning and she could have taken steps to prevent Kevin from self igniting.

Despite these contentions, upon the present record, we find that plaintiff could not establish factual causation to allow the jury to so conclude. Testimony at trial showed that Mrs. Mattocks did take all precautions she thought were necessary to protect her children from accidental injury due to fire, i. e., keeping matches out of the reach of her children. Yet, despite these precautions an accident did occur causing Kevin's pajamas to ignite resulting in serious injuries.

Plaintiff claims that, considering the effect of the Court's refusal to charge with respect to the duty to warn issue of the case, she is entitled to have the evidence construed most favorably to her and be given the advantage of every fair and reasonable inference. However, plaintiff has the burden to prove that the failure to warn caused the injury. *Greiner v. Volkswagenwerk,* supra.

Plaintiff claims that she is entitled to a presumption that she would have read and adhered to such a warning had it existed. However, the record conclusively rebuts any presumption arising in favor of plaintiff.

■ Nothing exists in the record from which we may infer plaintiff would have read and/or adhered to such a warning. No evidence was developed at trial with respect to how plaintiff would have reacted to a warning label. Plaintiff admitted that it was not her practice to read such labels even if they did exist, save the washing instructions. Therefore, we find plaintiff to have failed in her burden of establishing

---

**2.** "Was the unreasonably dangerous condition of the above-mentioned pajamas the substan-

tial contributing cause of the injury suffered by Kevin Mattocks?"

sufficient evidence to permit a jury to find that the absence of a warning on the pajamas was the proximate cause of Kevin Mattock's injury. Having determined that the Court properly removed the failure to warn issue from the jury for lack of evidence showing proximate cause, we deny plaintiff's motion based on this ground. *Greiner v. Volkswagenwerk,* supra; *Schreffler v. Birdsboro Corp.,* 490 F.2d 1148 [3d Cir. 1974].

▌ Plaintiff also suggests that the jury could have concluded that the pajamas were unreasonably dangerous because they were unavoidably unsafe. Comment K, 402A Restatement of Torts, 2d, requires that, with respect to an unavoidably unsafe product, a warning as to the inherent danger must issue to consumers. Plaintiff claims that any product with the propensity of causing death or serious harm, even though the state of the art of the industry could not make the product any safer (as per defendant's expert Golub's testimony), could be considered unavoidably unsafe under Comment K.

Plaintiff did not raise the "unavoidably unsafe product" issue as a theory of liability in its case in chief nor did she request a point for charge specifically on that issue. Plaintiff never objected to the Court's failure to charge on said issue. The Court was apprised of this ground for a new trial for the first time upon receipt of plaintiff's brief in support of her Motion for New Trial. Specific objection to instructions must be made at the time of the instructions if a party wishes to assign error to the failing to give such instructions. Fed.R. Civ.P. 51; *Arkwright Mut. Ins. Co. v. Philadelphia,* 427 F.2d 1273 [3d Cir. 1970]. Therefore, plaintiff's Motion for New Trial on this ground is denied.

▌ Plaintiff also takes exception to the Court's "missing witness charge" in her Motion for New Trial. Plaintiff claims the Court, by its charge, effectively precluded her from making a proper final argument, preventing the jury from drawing a legitimate inference from the failure of Daylin/Sullcraft to offer testimony of either Lewis or Albert Pinhas. Both of the Pinhas brothers were officers and employees of Sullcraft and were knowledgeable about the availability, quantity and price of flame retardant. Plaintiff claims that had either Pinhas been called at trial (plaintiff was unable to do so because they were outside the subpoena power), plaintiff could have rebutted through cross-examination the claims of Sullcraft and Daylin that they had no alternative but to buy non-flame retardant pajamas similar to those involved in the present action.

We feel the plaintiff's claim on this matter to be without merit. The Court did give the jury a "missing witness charge" informing them that

"The only inference that may be drawn is when it has been brought out in the evidence that there is some person who has some information that may be relevant here and that person is in control of or under the supervision of any party here. Then, the failure to produce that witness may result in an inference drawn by the jury that that witness' testimony would be unfavorable to the party who could have called him." Court's *Charge* p. 8

Subsequent to the above instruction, the Court noted that "it well appears that all witnesses have been available; all possible for depositions and you have seen the extent to which those witnesses have been questioned." Charge pp. 8–9. The deposition of these witnesses were used extensively at trial.

"A federal trial judge is not a mere arbitrator who rules upon objections and instructs the jury." *Kornicki v. Calmar S. S. Corp.,* 460 F.2d 1134, 1137 [3d Cir. 1972]. He may express fair and impartial comments with respect to the probative value of the evidence; but if he does, he must make it clear to the jury that it is the sole right of the jury to determine the weight and credibility of the evidence. *Kornicki,* supra.

It is readily apparent from the Court's charge that the trial judge made it clear that the jury was the sole arbitrator in

determining the weight and credibility of the evidence.

Plaintiff next asserts in support of her motion, that the improper injection of the carcinogenic propensities of certain flame retardants used in 1972 and admission of evidence that "tris" was used on 100% polyester in 1972, was highly prejudicial to her cause and should not have been permitted. Plaintiff claims she did not advocate the use of flame retardant polyesters and that she only alleged that defendant Daylin should have sold a 100% cotton flannelette treated with the flame retardant pyrovatex.

With respect to the single "carcinogenic" comment made during the cross examination of plaintiff's expert—especially in light of the overall length of trial (8 days)—we feel that no prejudice resulted to plaintiff from the two-sentence comment of Dan River's counsel.

As to the admission of evidence showing that "tris" was applied to 100% polyester, we likewise find no error justifying the grant of a new trial. During trial, plaintiff's counsel chose to read certain portion of Lewis Pinhas' deposition into the trial record showing that Sullcraft purchased flame retardant polyester from suppliers in 1972. Counsel for Daylin then requested that additional testimony be read into the record showing that the alternative polyesters supplied were treated with "tris."

Fed.R.Evid. 106 states:

"When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

Fed.R.Civ.P. 32(a)(4), which is substantially a restatement of Fed.R.Evid. 106 pertaining specifically to deposition use at trial states:

"If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which out in fairness to be considered with the part introduced, and any party may introduce any other parts."

Having determined that the additional deposition testimony offered by Daylin was relevant, considering those portions offered by plaintiff's counsel, the Court, with a view to achieving substantial fairness, allowed the introduction of "tris" related testimony.

Finally, plaintiff alleges she is entitled to a new trial because the jury's finding that the subject pajamas were not in an "unreasonably dangerous" condition within the meaning of § 402A, was against the weight of the evidence. Plaintiff also moves for Judgment N.O.V. alleging that, based upon all the evidence, the Court was in error in failing to grant plaintiff's Motion for Directed Verdict because the sale of the subject pajamas constituted the sale of an "unreasonably dangerous" product according to Pennsylvania law.

Having found no merit in the above arguments, Plaintiff's Motion for New Trial and Motion for Judgment N.O.V. will be denied.