507 A.2d 406

**Ronald L. KEIRS and Karissa Lynn Keirs, a Minor, by Ronald L. KEIRS, Her Natural Parent and Guardian**

**v.**

**WEBER NATIONAL STORES, INC. and Hatchers Mfg., Inc., a/k/a Hatchers, Beverly, Mass.**

Superior Court of Pennsylvania.

Argued Jan. 30, 1986.

Filed March 21, 1986.

Peter M. Suwak, Washington, for appellants.

Gerald J. Hutton, Pittsburgh, for Weber Nat., appellee.

John E. Wall, Pittsburgh, for Hatchers Mfg., appellee.

Before CIRILLO, President Judge, and DEL SOLE and BECK, JJ.

CIRILLO, President Judge:

Appellant Ronald L. Keirs suffered severe injuries when the jacket he was wearing was doused with a flammable

liquid and set ablaze. Taking the position that the double-knit fabric of the coat improperly acted as a "wick", appellant sued the manufacturer and seller of the garment, appellees herein, on strict liability and breach of warranty theories. Additionally, plaintiff Karissa Lynn Keirs, daughter of appellant, seeks damages for loss of her father's consortium. Both appellees filed preliminary objections in the form of demurrers, and the Court of Common Pleas of Washington County sustained the objections. We are now called upon to determine whether the trial court acted properly in so doing.

The trial court aptly noted the standard applicable to consideration of a demurrer, quoting from *Bartanus v. Lis*, 332 Pa.Super. 48, 52, 480 A.2d 1178, 1180 (1984), wherein we held that:

In considering preliminary objections in the nature of a demurrer, the question presented is whether, on the facts averred, the law says with certainty that no recovery is possible. *Hoffman v. Misericordia Hospital of Philadelphia*, 439 Pa. 501, 503–504, 267 A.2d 867, 868 (1970). A demurrer admits every well-pleaded material fact set forth in the complaint, as well as all inferences reasonably deducible therefrom, but not conclusions of law. *Sinn v. Burd*, 486 Pa. 146, 149–150, 404 A.2d 672, 673–674 (1979); *Gekas v. Shapp*, 469 Pa. 1, 5, 364 A.2d 691, 693 (1976); *Chorba v. Davlisa Enterprises, Inc.*, 303 Pa.Super. 497, 500, 450 A.2d 36, 37 (1982). The law does not provide a "magic formula" to determine the sufficiency of a plaintiff's complaint, however, the law *is* clear that a demurrer can only be sustained in a case free from doubt. *Hoffman v. Misercordia [sic] Hospital of Philadelphia, supra; Chorba v. Davlisa Enterprises, Inc.*, 303 Pa.Super. at 500, 450 A.2d at 38; *Pike County Hotels, Corp. v. Kiefer*, 262 Pa.Super. 126, 135, 396 A.2d 677, 681 (1978).

(Emphasis in original). *Accord, Fravel v. Suzuki Motor Co.*, 337 Pa.Super. 97, 486 A.2d 498 (1984). In passing upon such "freedom from doubt", the trial judge "must screen

the adequacy of the plaintiff's averments in the complaint, somehow employing a cost-benefit analysis to determine the unreasonableness of the design-related risks as a matter of law". *McKay v. Sandmold Systems,* 333 Pa.Super. 235, 240, 482 A.2d 260, 263 (1984). With these considerations in mind, it is our task to examine the factual allegations of the complaint to determine whether a valid cause of action has been stated. *Fravel v. Suzuki Motor Co., supra.*

Appellant first contends that appellees are strictly liable for the injuries incurred. A party is liable under this theory if its product was defective and such defect was the cause of the injury. *Azzarello v. Black Brothers Co.,* 480 Pa. 547, 391 A.2d 1020 (1978); *Carrecter v. Colson Equipment Co.,* 346 Pa.Super. 95, 499 A.2d 326 (1985); *Burch v. Sears Roebuck and Co.,* 320 Pa.Super. 444, 467 A.2d 615 (1983). A product is defective if at the time it leaves the supplier's control it lacks any element needed to make it safe for its *intended* use. *Azzarello, Carrecter, McKay, Burch, supra.* In appellant's view, the jacket was defective because the double-knit fabric absorbed large amounts of liquid, dispersed it evenly over his body, and held the fluid close to his skin, thus causing or at a minimum exacerbating the injuries. In rejecting this contention, the trial court observed that the subject garment was a "typical baseball designed jacket ... for casual wear," and that appellant "has not averred any fact indicating that the jacket was to be used in an industrial setting or that it was represented to be a fire resistant jacket." Also, responding to appellant's particular emphasis on the harm caused by the elastic wristbands, the court found these were simply "intended to provide a better fit and wind breakage."

Appellant takes exception to these findings on several grounds. First, he maintains that the court's holding on this point was based on various facts not of record, since appellant's complaint only described the jacket as having "a fabric body, knitted wristbands and cuffs, and leather sleeves." However, given this description, we find that as a matter of common knowledge the coat could also be de-

scribed in the manner chosen by the trial court, i.e., an ordinary baseball jacket. No facts beyond those of record were needed to simply describe the garment another way. The trial court's observations are clearly of a type allowed by the principle of judicial notice. *See Commonwealth v. Mills*, 312 Pa.Super. 386, 458 A.2d 1013 (1983) (stating the concept of judicial notice generally before concluding that the court could not take judicial notice of the exact location of a particular road marker). Indeed, appellant averred no special intended use of the jacket, and his implication that such a special use should be one of the "favorable inferences" afforded him as the party against whom the dismissal was sought, *Fravel, supra,* stretches that rule of pleadings interpretation considerably further than the law allows. It simply does not follow logically that the jacket was intended for a special purpose when the pleadings are utterly silent on that point.

■ Urging that he has "every legal right in the world to expect clothing to be designed to retard the effects of a burning," appellant maintains the trial court overlooked the important protective function of clothing generally. He cites cases in which the fire retardancy of certain garments, or more specifically the lack thereof, provided a basis for recovery or at least was found to be a matter for the jury to decide. He also observed that jackets such as the one here at issue are often worn by high school athletes working part-time in gas stations, auto body shops, and other places where sparks and accelerants might be present. Finally, he points to the importance of the jury in making factual determinations.

Mindful of the importance of the jury in our judicial system, we nonetheless agree with the trial court that there was nothing for a jury to decide in this case. Appellant has turned his back to the particular facts of this case and the real issue presented. At issue is not the general fire retardancy of the jacket. The question is whether an ordinary jacket is defective because it allows for severe burns when it is soaked with flammables and set on fire.

As posed, the question is almost absurd enough to suggest its own answer. For this reason, appellant places great emphasis on the allegation that the wicklike nature of the double-knit fabric *enhanced* the injuries. Either way, we can not say a garment is defective because it does not diminish the effect of burns arising in such a dramatically unique manner.

We do not suggest for a moment that clothing should not be designed with an eye toward the possibility that it might catch fire during the course of routine, day to day activities. Indeed, such obligation was generally found in those cases allowing recovery for injuries from clothes that did not adequately retard fire, and the public has been made acutely aware of the increased duty placed upon the makers of babies' pajamas, to cite just one example. Conversely, a claim such as appellant's might also be ripe for jury determination if, for example, the injured party is a race car driver or stunt man and the suspect garment was held out to be fire resistant or fire proof.

Here, however, we have an ordinary customer wearing an ordinary, over-the-counter jacket. If the makers and sellers of such common garments must plan for the contingency that their product will be saturated with some volatile substance before coming into contact with fire, we might all be reduced to wearing asbestos clothing. Contrary to appellant's suggestion, the fact that the wearer may work at a gas station does not mean the jacket will be soaked with gasoline. If the wearer does choose to misuse the product by allowing it to become saturated with an accelerant, it matters little *where* he is, for it does not change the fact that the jacket was intended only for normal, casual wear. True, the wearer may inadvertantly spill some substance on his jacket and encounter an unforseen source of fire even when excercising the utmost care. However, this possibility cannot support a finding of product defect, for nothing is foolproof.

As appellant himself points out, we must weigh the utility of the product against its potential for harm and the possi-

bility of safer alternatives. *Burch v. Sears Roebuck and Co., supra.* Given the absorbancy of most fabrics and the relatively remote chance of injuries such as appellant's, we uphold the trial court's conclusion that a garment such as appellant's baseball jacket is not defective for not minimizing the effects of a fire set after the garment was doused with an accelerant.

The trial court also rejected the strict liability claim on the ground that even if there was a defect, the intervening criminal acts of the third party destroyed any causal connection between such defect and the losses suffered. In this regard, the court relied on appellant's allegation in his complaint that he was "horribly and terribly burned by fire, deliberately set and intensified by the use of accelerants." Appellant now urges that the trial court read too much into the complaint, for the allegation can only be taken to mean that the *fire* was deliberate, an accelerant somehow found its way onto the jacket, and then the jacket came in contact with the flame in a manner still unknown, for appellant lost his memory in the trauma of the event. We decline to accept appellant's carefully crafted word play. If "deliberate" did not refer to the manner in which the flame contacted the jacket, why is it mentioned at all? That is, if appellant is now suggesting he inadvertently backed into the flame, then whether the fire itself was deliberately set would have absolutely nothing to do with the matter. The meaning of the allegation is plain on its face, and we cannot accept appellant's transparent attempt to change it on appeal. In any event, "causation" refers to the relationship between a defect and some ultimate harm. Since we find no defect here, it necessarily follows that causation cannot exist.

■ As a corollary, appellant contends appellees should be liable "for manufacturing and marketing a dangerous product without providing a *warning* not to wear the jacket in the vicinity of petroleum products." Again, appellant has lost sight of the issue. The jacket is not a "dangerous product" when worn as intended. Indeed, we do not know

that it is more dangerous than any other casual jacket when in the vicinity of petroleum products. The jacket was only "dangerous" after it was doused and set aflame. A warning to the effect that "this garment is dangerous if exposed to flame when saturated with accelerants" would be a superflous statement of the obvious, at best.

■ Appellant also maintains that appellees breached implied warranties of merchantability and fitness for the purpose of general wearing. Appellant cites authority to the effect that warranty questions are generally for the jury to decide. He also posits that the warranties would require the jacket to be flame resistant. To reiterate, however, the fire retardancy of the jacket under normal circumstances need not be considered and for all we know the jacket is safe in this respect. The fact that the jacket was doused with a flammable liquid negates a claim under both warranty theories. 13 Pa.C.S. § 2314 dictates that a product is merchantable if it is fit for its ordinary purpose. There is nothing to indicate that appellant's jacket was not so fit. Concerning fitness for a particular purpose, 13 Pa.C.S. § 2315 mandates that the seller can only be liable under this theory if he knew of the specific purpose the buyer would make of the product and recommended that particular good for such purpose, with the buyer relying on the seller's expertise in making that particular choice. Nowhere in the pleadings is there any indication that appellant made known explicitly or implicitly a desire to purchase a fire proof jacket.

■ Finally, we consider plaintiff Karissa Lynn Keirs' claim for the loss of her father's consortium. We observe that at the time of this writing, a child's right to recover for such alleged loss has not been explicitly recognized in this Commonwealth. Nonetheless, Karissa's claim is derivative and must therefore fail, for the reason our courts have long espoused in the context of husband and wife consortium claims. We have already concluded that the trial court acted properly in granting appellees' demurrers; it necessarily follows that since appellees are not liable to appellant

Ronald Keirs, they cannot be liable to his daughter for alleged losses stemming from the very same injury. *Little v. Jarvis*, 219 Pa.Super. 156, 280 A.2d 617 (1971).

The order sustaining the preliminary objections of appellees Weber and Hatchers is affirmed.

DEL SOLE, J., concurs in result.