Travis L. SHOUEY, a minor by and through Sharline LITZ, parent and natural guardian, Plaintiff,

v.

DUCK HEAD APPAREL COMPANY, INC., Defendant and Third Party Plaintiff,

v.

Sharline Litz, Third Party Defendant,

and

Zippo Manufacturing Company, Third Party Defendant.

No. 4:CV–96–2206.

United States District Court, M.D. Pennsylvania.

May 17, 1999.

defendant Duck Head Apparel Company, Inc.

J. David Smith, McCormick Law Firm, Williamsport, PA, for third party defendant Litz.

Gary L. Weber, Mitchell, Mitchell, Gray & Gallagher, Williamsport, PA, for third-party defendant Zippo Manufacturing.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On December 23, 1996, plaintiff Travis L. Shouey commenced this action with the filing of a complaint against defendants Stanwood Corporation and Standard Knitting Mills, Inc. After some confusion about the proper party defendant, a second amended complaint was filed on July 24, 1997, naming defendant Duck Head Apparel Co., Inc. Shouey, a minor bringing this action through Sharline Litz, his parent and natural guardian, alleges that he was injured while wearing a shirt manufactured by Duck Head's predecessor in interest. On August 25, 1984, Shouey apparently was playing with a lighter when the shirt caught fire. He asserts claims for negligence/gross negligence (Count I), breach of an implied warranty (Count II), and strict products liability (Count III).

On October 6, 1997, Duck Head filed a third-party complaint alleging that Litz was negligent in leaving the lighter where Shouey could have access to it and for failing to supervise Shouey. On June 18, 1998, with leave of court, Duck Head filed a third-party complaint alleging that third-party defendant Zippo Mfg. Co. was liable to Duck Head because the lighter manufactured by Zippo caused the injury to Shouey.

Before the court are motions for summary judgment filed by Duck Head and Zippo.

Lee C. Schwartz, Anne M. Riegle, Tucker Arnsburg & Swartz, Harrisburg, PA, for plaintiff.

Zygmunt R. Bialkowski, Jr., Bialkowski, Savitsky & Polachek, Scranton, PA, for

## DISCUSSION:

### I. STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed. R.Civ.P. 56(c) (emphasis added).

... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex* at 323, 106 S.Ct. 2548. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex* at 325, 106 S.Ct. 2548.

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 694 (3d Cir.1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Material facts are those which will affect the outcome of the trial under governing law. *Anderson* at 248, 106 S.Ct. 2505. The court may not weigh the evidence or make credibility determinations. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir.1998). In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *Boyle* at 393; *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir.1988).

If the moving party satisfies its burden of establishing a prima facie case for summary judgment, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. *Boyle* at 393 (quoting, *inter alia, Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### II. STATEMENT OF FACTS

The facts underlying what occurred are, for the most part, not the subject of dispute. On August 25, 1984, Travis Shouey was four years old. Prior to that time, Shouey had only minor medical problems, but later was diagnosed as having SEDLD, partial retardation, and attention deficit disorder. Shouey lived in an apartment with his mother, Litz, sister, Muriel Yaw Dunkle, and stepfather, Luther Shouey.

On that date, Litz lit a cigarette with a Zippo lighter and placed the lighter and cigarette pack on an end table. She then went to the front door in response to a knock. The children, who had been playing with water in the bathroom, joined their mother at the door. While his mother was at the door talking to a neighbor, Shouey asked if he could change out of his wet shirt and went to his room to do so. He put on a shirt manufactured by Duck Head's predecessor in interest. The shirt was a T-shirt, children's size large (14–16),

light blue with dark trim and a "Fuller Brush" advertisement on the front. It had been found in a laundromat by a friend of Litz, who allowed Shouey to wear it, although it was loose, baggy, and hung from Shouey's body.

When Shouey did not return to the front door, Litz sent Dunkle to find him. Dunkle informed Litz that Shouey was sitting alone in the living room watching television. The end table with the lighter and cigarettes was next to the chair occupied by Shouey.

Two weeks earlier, Shouey's natural father had allowed him to play with an empty lighter. Believing that it was permissible to play with the Zippo lighter, Shouey picked it up and began flipping the wheel while holding the lighter close to his body. Apparently, the lighter ignited and the shirt caught fire. Shortly thereafter, Litz discovered Shouey on fire and extinguished the flames with a blanket.

Any additional facts will be discussed in the context in which they are, or may be according to at least one party, material for purposes of summary judgment.

## III. DUCK HEAD'S MOTION

### (A) Count I—Negligence

Duck Head moves for summary judgment with respect to the negligence claim because the T-shirt was not used as sleepwear, it met federal standards of flammability for children's sleepwear, and there is no evidence that a warning would have changed the course of events.

The Supreme Court of Pennsylvania recently summarized the state law [1] of negligence as follows:

> To establish a cause of action in negligence, the plaintiff must demonstrate that the defendant owed a duty of care

to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage. *Reilly v. Tiergarten Inc.*, 430 Pa.Super. 10, 14, 633 A.2d 208, 210 (1993), *alloc. denied,* 538 Pa. 673, 649 A.2d 675 (1994). Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances. *Lanni v. Pennsylvania R. Co.,* 371 Pa. 106, 88 A.2d 887 (1952). *See also* Pa. SSJI (Civ) 3.01. The mere occurrence of an accident does not establish negligent conduct. *Butler v. City of Pittsburgh,* 113 Pa.Cmwlth. 406, 410, 537 A.2d 112, 114, *alloc. denied,* 519 Pa. 655, 546 A.2d 60 (1988). Rather, the plaintiff has the burden of establishing, by a preponderance of the evidence, that the defendant engaged in conduct that deviated from the general standard of care expected under the circumstances, and that this deviation proximately caused actual harm. *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978).

*Martin v. Evans,* 551 Pa. 496, 501, 711 A.2d 458, 461 (1998), *reargument denied.*

▮ As to the claim for gross negligence, such is not a separate claim because there are no degrees of negligence under Pennsylvania law. *Ferrick Excavating and Grading Co. v. Senger Trucking Co.,* 506 Pa. 181, 191, 484 A.2d 744, 749 (1984). Rather, there are different standards of care which are not generally applicable in negligence cases. *Id.* at 191–192, 484 A.2d at 749 (degree of care relevant in bailment cases depends on which party, bailor or bailee, benefits from the bailment). Moreover, gross negligence is not relevant to damages because the standard for punitive damages is a higher degree of culpability. *SHV Coal, Inc. v. Continental Grain Co.,*

---

1. A federal court sitting with diversity jurisdiction applies the law of the state whose law governs the action, *Greater New York Mutual Insurance Co. v. North River Insurance Co.,* 85 F.3d 1088, 1091 (3d Cir.1996), which generally is the law of the forum state. *Clark v.*

*Modern Group Ltd.,* 9 F.3d 321, 326 (3d Cir. 1993), *reh'g denied.* The parties agree that Pennsylvania law governs. The import of the application of state law in federal court is discussed at greater length below.

526 Pa. 489, 495, 587 A.2d 702, 705 (1991), *reargument denied.* We therefore will address Count I as asserting simply a claim of negligence.

Duck Head's argument in this context is primarily that it had no reason to know that the T-shirt would be used as children's sleepwear. We fail to see how the argument is pertinent, since the T-shirt plainly was not being used as sleepwear at the time that Shouey was burned. The question is not whether its use as sleepwear was foreseeable, but whether its use by a child and potential exposure to flames was foreseeable.

Duck Head recites, "If the makers of such common clothing are required to plan for the potential of the occurrence of accidents such as the one at issue in this case, 'we might all be reduced to wearing asbestos clothing' due to clothing manufacturers' fear of liability." Brief in Support of Motion for Summary Judgment at 8. In support of this proposition, Duck Head cites *Keirs v. Weber Nat'l Stores, Inc.,* 352 Pa.Super. 111, 117, 507 A.2d 406, 409 (1986). In that case, an adult was wearing a baseball jacket which was doused with gasoline and set ablaze. He sued under a theory of strict products liability. The Superior Court upheld the trial court's conclusion that the jacket could not be found defective "for not minimizing the effects of a fire set after the garment was doused with an accelerant." *Id.* at 117, 507 A.2d at 408. The case represents an application of the risk-utility or *Azzarello* test, discussed below in the context of strict products liability. Succinctly stated, the Superior Court held that a manufacturer need not foresee the possibility of inadvertent spills of highly flammable liquids or misuse of a product by dousing with such liquids, followed by exposure to a source of fire.

The situation described in *Keirs* varies significantly from the facts of this case. The wearer in *Keirs* was an adult and the clothing was soaked with an accelerant. The wearer in this case was a child and the clothing itself caught fire. In fact, the language of *Keirs* is contrary to the proposition for which it is cited by Duck Head:

> We do not suggest for a moment that clothing should not be designed with an eye toward the possibility that it might catch fire during the course of routine, day to day activities. Indeed, such obligation was generally found in those cases allowing recovery for injuries from clothes that did not adequately retard fire, and the public has been made acutely aware of the increased duty placed upon the makers of babies' pajamas, to cite just one example.

*Id.* at 117, 507 A.2d at 408–409.

■ Duck Head also points out that the T-shirt was rated Class 1 Normal Flammability. The fact that the garment needed to be tested for the rate at which it would burn suggests rather strongly that the manufacturer owes a duty to the user to provide a product that does not burn unreasonably quickly or in some other especially harmful manner, as by generating extraordinary heat or by melting. However, the fact that a fabric meets the federal standards for flammability does not affect the existence of (i.e. does not pre-empt) a common law cause of action. *O'Donnell v. Big Yank, Inc.,* 696 A.2d 846 (Pa.Super.1997), *reargument denied, allocatur denied,* 725 A.2d 182 (Pa.1998) (table).

■ As a corollary, Duck Head argues that it did not owe a duty to warn because the product was not "unreasonably dangerous," language usually associated with strict products liability analysis (again, discussed below). In *Overbeck v. Cates,* 700 A.2d 970 (Pa.Super.1997), *reargument denied, allocatur denied,* 553 Pa. 682, 717 A.2d 534 (1998) (table), the Superior Court held that a person who supplies a chattel to another may be liable under a negligence theory for physical harm caused by the use of the chattel if the supplier (1) knows or has reason to know that the chattel is in a dangerous condition, (2) has no reason to believe that those for whose

use the chattel is supplied will realize the dangerous condition, and (3) fails to warn those for whose use the chattel is supplied of the dangerous condition. *Id.* at 972 (quoting RESTATEMENT (SECOND) OF TORTS, § 388).

■ Shouey's theory of liability in this case is that the T-shirt was highly flammable and that Duck Head (or its predecessor in interest) had reason to know of such, and failed to provide a reasonable warning. The T-shirt did not have to be "unreasonably dangerous," but only of such a nature as to cause the potential user to be "endangered by its probable use." *Id.*

Duck Head's final argument relating to the negligence claim is that there is no evidence that Litz would have heeded the warning. Duck Head first points out that Litz testified during her deposition that she knew that clothing such as the T-shirt would ignite if it came into contact with fire. Again, the question is the rate at which the T-shirt burned, not just that it burned (i.e. whether it was fire retardant, not fireproof).

Duck Head also cites *Mattocks v. Daylin, Inc.,* 78 F.R.D. 663 (W.D.Pa.1978),[2] a case also involving a minor injured by flammable clothing, for the proposition that a plaintiff must produce evidence that the parent would have read and heeded a warning. Actually, addressing the plaintiff's contention that she was entitled to a presumption that she would have read and adhered to a warning, the district court noted that the plaintiff had testified that it was not her practice to read such labels, apart from washing instructions. *Mattocks* at 665–666. Moreover, recent authority suggests that a plaintiff is entitled to a presumption such as that argued by the plaintiff in *Mattocks.*

In *Pavlik v. Lane Limited/Tobacco Exporters International,* 135 F.3d 876, 883 (3d Cir.1998), a strict products liability action based on a failure to warn, the Third Circuit noted that comment *j* to RESTATEMENT (SECOND) OF TORTS, § 402A, is applicable under Pennsylvania law. Comment *j* provides that a seller is entitled to assume that a warning will be read and heeded. The problem with an instance of no warning or insufficient warning is that causation is difficult to prove: the plaintiff must demonstrate what *would* have happened or what *might* have happened, as opposed to what actually *did* happen. *Id.* at 882–883. The Third Circuit pointed out that it logically follows from comment *j* that a user is entitled to an evidentiary presumption that a warning would have been read and heeded. "This presumption assists the failure to warn plaintiff in satisfying his burden of showing proximate cause." *Id.* at 883 (citation omitted).

The Third Circuit explained:

We now predict that Pennsylvania would adopt a rebuttable heeding presumption as a logical corollary to comment j. Since the very idea of imposing strict liability for the failure to warn is premised on the belief that the presence or absence of an adequate warning label will affect the conduct of a product user, it would be illogical, and contrary to the basic policy of § 402A, to accept that a product sold without an adequate warning is in a "defective condition," ... while simultaneously rejecting the presumption that the user would have heeded the warning had it been given. Indeed, in its most recent (albeit limited) discussion of comment j, the Pennsylvania Supreme Court stated plainly that "the law presumes that warnings will be obeyed." [*Davis v. Berwind Corp.,* 547 Pa. 260, 268, 690 A.2d 186, 190 (1997).] We predict, therefore, that Pennsylvania would agree that "[c]omment j provides ample support for application of the rebuttable 'heeding' presumption ... to

---

**2.** Duck Head does not mention that this case was reversed by the Third Circuit. *Mattocks v. Daylin, Inc.,* 611 F.2d 30 (3d Cir.1979).

assist a plaintiff in proving the absence of a warning proximately caused harm." ...

*Pavlik* at 883 (initial brackets added, further brackets in original; further citations omitted).[3]

Recently, the Superior Court adopted the heeding presumption based in part on the reasoning of the Third Circuit. *Coward v. Owens–Corning Fiberglas Corp.*, 729 A.2d 614, 618, 621 (Pa.Super.1999).[4] The Superior Court also reasoned that the presumption was consistent with the requirement under Pennsylvania law that a plaintiff in a strict products liability case establish that the failure to warn was both a proximate cause and a cause in fact of the plaintiff's injury. *Id.* at 619–20. Requiring the plaintiff to come forward with affirmative evidence, on the other hand, would be inconsistent with the reasons stated by the Supreme Court of Pennsylvania in adopting 402A, such as easing the plaintiff's burden of proof and encouraging manufacturers to provide safe products. *Id.* at 620. Moreover, the heeding presumption is inherent in holdings of the state courts in similar cases in which there was evidence that the user of the product was aware of the danger but proceeded to use the product regardless. *Id.* at 620. The Superior Court concluded:

> Accordingly, we conclude that Pennsylvania jurisprudence poses no impediment to adoption of a heeding presumption modeled on the presumption stated in [*Coffman v. Keene Corp.*, 133 N.J. 581, 628 A.2d 710 (N.J.Sup.Ct.1993) ], and indeed appears, implicitly, to accommodate its application. Additionally, because the policies expressed by our Supreme Court in adopting strict liability under Section 402A support the goals advanced in *Coffman*, we conclude that the Court would adopt the heeding presumption to establish legal causation where, as in this case, exposure to the defendant's hazardous product was the cause in fact of the plaintiff's injuries. Consequently, we now hold that in cases where warnings or instructions are required to make a product non-defective and a warning has not been given, the plaintiff should be afforded the use of the presumption that he or she would have followed an adequate warning, and that the defendant, in order to rebut that presumption, must produce evidence that such a warning would not have been heeded. *Compare Coffman, supra* at 603, 628 A.2d 710.

*Coward* at 621 (bracketed material added).

The question next becomes whether the Pennsylvania courts would apply the heeding presumption in failure to warn cases in which the plaintiff proceeds on a negligence theory instead of, or in addition to, a strict products liability theory. We believe that they would.

The first point to consider is that negligence cases also require a plaintiff to prove both proximate cause and cause in fact. *Redland Soccer Club, Inc. v. Dept. of the Army*, 55 F.3d 827, 851 (3d Cir.1995), *cert. denied*, 516 U.S. 1071, 116 S.Ct. 772, 133 L.Ed.2d 725 (1996). Thus, the element of causation is the same in both types of cases, and the burden on the

---

**3.** The *Davis* court cited *Baldino v. Castagna*, 505 Pa. 239, 478 A.2d 807 (1984), for the proposition that "the law presumes that warnings will be obeyed." The *Baldino* court indicated that the plaintiffs had filed a negligence action, but the principles applied were strict products liability. The case appears to support a conclusion that principles of strict products liability transfer easily to a negligence action when the alleged negligence involves inadequate warnings.

**4.** We are, of course, bound by the holding of the Third Circuit in *Pavlik*. However, the *Coward* opinion demonstrates that there has been no intervening change in Pennsylvania law which would undermine *Pavlik*. More importantly, the rationale of *Coward* supports more directly our reasoning below concerning the applicability of the heeding presumption in negligence cases. Thus, for present purposes, *Coward* is more than a statement of how the Supreme Court of Pennsylvania would view the heeding presumption.

plaintiff of proving a hypothetical is the same. The heeding presumption in the negligence context serves the same policies enunciated by the Supreme Court of Pennsylvania in adopting § 402A and which are served by adopting the heeding presumption in the context of strict products liability: the seller or manufacturer has derived the benefit of releasing the product into the stream of commerce and is best able to allocate losses, and the burden on a plaintiff to prove causation, a particularly difficult element in the context of injuries arising from dangerous products, is lightened. *Walton v. Avco Corp.*, 530 Pa. 568, 576, 610 A.2d 454, 458 (1992).

Moreover, the statement by the Supreme Court of Pennsylvania quoted by the Third Circuit in *Pavlik*, above, is that "the law" presumes that adequate warnings will be heeded. This general statement is not limited to cases under § 402A.

We conclude that, when a claim of negligence is premised on a failure to provide warnings concerning an allegedly dangerous product, the Pennsylvania courts would hold that the heeding presumption will apply with the same force as when the claim is based in strict products liability. Shouey need not produce evidence that a warning would have been heeded in order to survive the motion for summary judgment.

Duck Head's motion for summary judgment on Count I of the second amended complaint will be denied.

### (B) Count II—Breach of Warranties

Count II of the second amended complaint sets forth a claim for breach of the implied warranties of merchantability and fitness for a particular purpose. Duck Head again bases much of its argument on the allegation that the T-shirt was not intended to be used as a child's sleepwear. As Duck Head itself notes, however, the T-shirt was not being used in that manner when Shouey was injured. Brief in Support of Motion for Summary Judgment at 12–13. Rather, it was used in the manner

one would expect a child's T-shirt to be used: it was being worn by a child during a normal day at home with his mother and sibling.

Both the implied warranty of merchantability, *see* 13 Pa.Cons.Stat.Ann. § 2314, and the implied warranty of fitness for a particular purpose, *see* 13 Pa.Cons.Stat. Ann. § 2315, arise under operation of law and serve the purpose of protecting buyers from loss when goods purchased are below commercial standards or unfit for the buyer's purpose. Goods are merchantable if they will pass without objection in the trade and are fit for the ordinary purposes for which such goods are used. Goods are fit for a particular purpose if, at the time of contracting, the seller has reason to know of the buyer's purpose for the goods and of the buyer's reliance on the seller's skill or judgment in supplying the goods. *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir.1992); *Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 258 (Pa.Super.1997), *allocatur denied*, 725 A.2d 178 (Pa.1998) (table).

■ Shouey again states that the T-shirt was defective, or substandard, in that it ignited easily and burned quickly. According to Shouey's expert, the T-shirt also did not have warnings of its propensity to burn quickly and easily, and could have been made of alternative, less flammable material. We believe that such a characteristic would support a jury conclusion that the T-shirt was not merchantable or fit for a particular purpose, and the motion for summary judgment on Count II of the second amended complaint will be denied.

### (C) Count III—Strict Products Liability

■ Count III of the complaint sets forth the claim for strict products liability under § 402A. To recover under § 402A, a plaintiff must establish that the product was defective, that the defect was the proximate cause of injury to the plaintiff, and that the defect which caused the inju-

ry existed at the time that the product left the seller's possession. *Davis v. Berwind Corp.*, 547 Pa. 260, 267, 690 A.2d 186, 190 (1997). A manufacturer or seller will not be liable if the product is made unsafe by subsequent changes unless the manufacturer or seller reasonably could have foreseen the alteration. *Id.*[5]

■ Duck Head argues that Shouey has not produced evidence that the T-shirt was defective. Actually, Shouey has produced an expert report indicating that the shirt was made of material which was highly flammable. To this, Duck Head retorts that the T-shirt met established flammability standards. Because it implicates negligence concepts, evidence of industry standards is not admissible in a strict products liability action. *Lewis v. Coffing Hoist Div., Duff-Norton Co., Inc.*, 515 Pa. 334, 528 A.2d 590 (1987).

Duck Head also contends that Shouey has not produced evidence that the T-shirt was in the same condition at the time of the accident as when it left the hands of the seller. The alleged defect is in the material used to make the T-shirt. We believe a reasonable inference may be drawn that the T-shirt was still made of the same material when it burned.

Duck Head's motion for summary judgment on Count III of the second amended complaint will be denied.

## IV. ZIPPO'S MOTION

### (A) Statute of Limitations

■ As a preliminary matter, Zippo contends that the claims against it are barred by the applicable statute of limitations, the accident having occurred in 1984. *See* 42 Pa.Cons.Stat.Ann. § 5524. Zippo is a party in this action as a result of Duck Head's third-party complaint, not any direct claim asserted by Shouey. Duck Head's argument that the statute of limitations is tolled during the period of Shouey's minority misses the point. The applicable provision reads:

If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. *Such person* shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter. As used in this subsection the term "minor" shall mean any individual who has not yet attained the age of 18.

42 Pa.Cons.Stat.Ann. § 5533(b) (emphasis added). This provision tolls the statute only for claims to be asserted by the minor, not by a third party.

■ The rule governing third party claims reads in relevant part:

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action *who is or may be liable to the third-party plaintiff* for all or part of the plaintiff's claim against the third-party plaintiff.

Fed.R.Civ.P. 14(a) (emphasis added). This rule allows a defendant to seek indemnity, contribution, or reimbursement under some other form of third party liability, from third parties who may be liable for the plaintiff's injuries, jointly with or in place of the defendant. *Wandrey v.*

---

**5.** Duck Head recites as an element of the claim that the product must have been in substantially the same condition at the time of the accident as it was when it was sold. Brief in Support of Motion for Summary Judgment at 13. The Supreme Court of Pennsylvania recites this principle in terms of subsequent change to the product. In an earlier opinion in *Davis*, the Superior Court referred to a subsequent change as severing the chain of causation. *Davis v. Berwind Corp.*, 433 Pa.Super. 342, 356, 640 A.2d 1289, 1296 (1994), *aff'd*, 547 Pa. 260, 690 A.2d 186 (1997). Thus, rather than a lack of subsequent changes being an element of the cause of action, the occurrence of subsequent changes may have the effect of negating the causation element.

*McCarthy,* 804 F.Supp. 1384, 1386 (D.Kan. 1992). Such a claim does not accrue for purposes of a statute of limitations until the third party plaintiff becomes obligated, either by judgment or by settlement, to pay the original plaintiff. *Id.* at 1386–1387.

Thus, while we disagree with Duck Head that the statute of limitations is tolled by Shouey's minority, we find that the applicable limitations period has not expired because the third party claim has not accrued for purposes of the statute.

### (B) Count III—Strict Products Liability

Zippo moves for summary judgment as to the strict products liability claim based on *Griggs v. BIC Corp.,* 981 F.2d 1429 (3d Cir.1992). Duck Head and Shouey respond by arguing that the case is in error and not controlling. This argument raises sensitive issues of a federal court's application of state law in diversity cases and the responsibility of a district court to adhere to a higher court's decisions.

When exercising jurisdiction premised on diversity of citizenship, a federal district court applies the substantive law of the state whose law governs the action. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78–79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Paolella v. Browning–Ferris, Inc.,* 158 F.3d 183, 189 (3d Cir.1998). The federal court may not impose its view of what the state law should be, but must apply existing state law as interpreted by the state's highest court in an effort to determine how the state court would decide the precise legal issue before the federal court. *Koppers Co., Inc. v. Aetna Casualty and Surety Co.,* 98 F.3d 1440, 1445 (3d Cir.1996). In the absence of any precedent from the state's highest court, the federal court must predict how the state court would decide the issue. *Polselli v. Nationwide Mutual Fire Insurance Co.,* 126 F.3d 524, 528–529 n. 3 (3d Cir.1997). When predicting how the state's highest court would rule on the issue, the federal court must look to decisions of any intermediate state appellate court, other federal courts interpreting the law of the state, and other state supreme courts that have decided the issue, as well as analogous decisions, dicta, scholarly works, and any other reliable data which would tend to show convincingly how the state's highest court would rule. *Paolella* at 189; *Koppers* at 1445. Intermediate appellate court decisions are given "substantial weight" in the absence of any indication that the state's highest court would rule otherwise. *Polselli* at 529 n. 3.

■ This case is not one in which we must determine how a decision of the state's highest court would apply. *See In re Abrams,* 521 F.2d 1094, 1103 (3d Cir.) (controlling decision of New Jersey Supreme Court could not be disregarded "with fealty to consistency"), *cert. denied,* 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975). Nor is this an instance in which the state courts have been consistent in a particular holding, adhering to an older decision of the state's highest court. *See Seese v. Volkswagenwerk A.G.,* 648 F.2d 833, 836–837 (3d Cir.) (North Carolina courts consistent in rejecting § 402A, including recent decisions of intermediate appellate courts, so that district court erred in predicting that state supreme court would change its mind and adopt § 402A), *cert. denied,* 454 U.S. 867, 102 S.Ct. 330, 70 L.Ed.2d 168 (1981). However, it must be remembered that it is state law as it exists at the time of the decision of the federal court that governs. *Seese* at 837 (considering opinion of North Carolina Supreme Court issued during pendency of appeal); *Air Products & Chemicals, Inc. v. Hartford Accident and Indemnity Co.,* 25 F.3d 177, 181–182 (3d Cir.1994) (remanding for reconsideration by district court in light of opinion of Supreme Court of Pennsylvania issued during pendency of appeal). Thus, it is the most recent pronouncements of state law that govern the decision of the federal court exercising diversity jurisdiction. *See generally Sonfast Corp. v. York Int'l Corp.,* 875 F.Supp. 1088, 1094 (M.D.Pa.1994) (when state law

undeclared or not current, federal court must discern most probable state of current law so that outcome in federal court is substantially the same as it would be in state court), *judgment aff'd*, 74 F.3d 1227 (3d Cir.1995) (table).[6]

The problem here is the use of the term "unreasonably dangerous" as it applies in cases under § 402A. To present the problem as clearly as possible, we quote the section in its entirety:

§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition *unreasonably dangerous* to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

RESTATEMENT (SECOND) OF TORTS, § 402A (1965) (emphasis added).

This section was adopted as the law of Pennsylvania in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). The Supreme Court of Pennsylvania later decided that the question of whether a product is "unreasonably dangerous" is a matter for the court:

Thus the mere fact that we have approved Section 402A, and even if we agree that the phrase "unreasonably dangerous" serves a useful purpose in predicting liability in this area, it does not follow that this language should be used in framing the issue for the jury's consideration. Should an ill-conceived design which exposes the user to the risk of harm entitle one injured by the product to recover? Should adequate warnings of the dangerous propensities of an article insulate one who suffers injuries from those propensities? When does the utility of a product outweigh the unavoidability of the danger it may pose? These are questions of law and their resolution depends upon social policy. Restated, the phrases "defective condition" and "unreasonably dangerous" as used in the Restatement formulation are terms of art invoked when

**6.** In *Microvote Corp. v. Montgomery County*, 942 F.Supp. 1046, 1049 (E.D.Pa.1996), *aff'd*, 124 F.3d 187 (3d Cir.1997) (table), the district court held that it was bound by a pronouncement of the Supreme Court of Pennsylvania even if the precedent was "old." An intervening opinion of the Supreme Court did not undermine the rationale of the 35–year–old opinion on which the district court relied. However, it should be noted that, because of this, the older opinion had not been undermined in any way. Also, the principle of the older decision, that a county could not be held liable under a quantum meruit theory because a statute prohibited liability by implication on the part of a county, was still valid because there was no change in the statutory authority.

Thus, it is not clear from this opinion that a specific holding of the Supreme Court would

apply if general principles announced or relied-on in its opinion are undermined by subsequent decisions. For example, if the Supreme Court were to announce that a county could be liable by implication (general principle) in a non-quantum meruit case, there is no reason to conclude that it has not changed its mind as to quantum meruit (specific holding). *See generally New Hampshire Insurance Co. v. Vieira*, 930 F.2d 696, 701 (9th Cir.1991) (when California Supreme Court decision based on opinion of Minnesota Supreme Court which was subsequently overturned by the latter, federal court free to conclude that California Supreme Court would overturn its own decision).

Fortunately, we are not faced with such a situation.

*strict liability* is appropriate. It is a judicial function to decide whether, under the plaintiff's averment of the facts, recovery would be justified; and only after this judicial determination is made is the cause submitted to the jury to determine whether the facts of the case support the averments of the complaint. They do not fall within the orbit of a factual dispute which is properly assigned to the jury for resolution.

*Azzarello v. Black Bros. Co., Inc.*, 480 Pa. 547, 558, 391 A.2d 1020, 1026 (1978) (emphasis in original). To distinguish a "defective condition" from an "unreasonably dangerous" product for these purposes, the Court added:

> For the term guarantor to have any meaning in this context the supplier must at least provide a product which is designed to make it safe for its intended use. Under this standard, in this type of case, the jury may find a defect where the product left the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it unsafe for the intended use. It is clear that the term "unreasonably dangerous" has no place in the instructions to a jury as to the question of "defect" in this type of case.

Id. at 559, 391 A.2d 1020, (footnotes omitted). *See also* Pa. Suggested Standard Jury Instructions (Civil) § 8.02 (using similar language to define "defect").

The upshot of *Azzarello* is that consideration of whether a defendant will be held liable as a seller or manufacturer of a defective product becomes a two-step process. First, the court determines whether, given the facts as alleged by the plaintiff, the defendant should be subject to strict liability. Second, the jury determines whether the product lacks any element necessary to make it safe for its intended use. In essence, using the terms of art, the court determines whether the product is "unreasonably dangerous" and the jury determines whether the product is "defec-

tive." The question of how the court is to perform its part of this analysis was left to another day.

The question was addressed tangentially in *Lewis v. Coffing Hoist Div., Duff-Norton Co., Inc.*, 515 Pa. 334, 528 A.2d 590 (1987), in which the Supreme Court of Pennsylvania held that evidence of industry standards was inadmissible in a case under § 402A because it is the product, and not the manufacturer's conduct relative to the product, which is on trial. In so holding, the Court pointed out that *Azzarello* stands for the proposition (at least by implication) that negligence concepts are not to be injected into strict products liability actions. *Lewis* at 341, 528 A.2d at 593. From *Lewis*, then, it becomes clear that any conduct of the defendant which must be considered is part of the court's social policy analysis under *Azzarello* because presenting evidence of such to the jury would be to introduce negligence concepts to the jury.

■ The Court of Appeals for the Third Circuit applied *Azzarello* in *Griggs v. BIC Corp.*, 981 F.2d 1429 (3d Cir.1992), a case involving a child playing with a disposable butane cigarette lighter. The Third Circuit noted first that the test to be applied was whether the product was safe for its intended use, a concept which "impliedly encompasses the participation of an intended user." *Id.* at 1433. The court specifically distinguished intended use from foreseeable use or expected use, and concluded that the latter two concepts play no part in strict liability. *Id.* at 1433 n. 7. Summarizing its view of cases cited by the plaintiffs, the Third Circuit concluded, "None of them supports the contention that in Pennsylvania a manufacturer has a duty in strict liability law to guard against foreseeable use by unintended users in the context of the initial determination of defect." *Id.* at 1434. Despite using language suggesting that its analysis was under the "defective condition" test, the Third Circuit then added an indication that its analysis was under the "unreasonably

dangerous" test by stating, "Because the plaintiffs do not contend that the lighter was unsafe for its intended use, the trial court committed no error in holding that the lighter was not defective and that BIC *as a matter of law should not bear the risk of loss.*" *Id.* (emphasis added). *Compare Azzarello* at 1026 (quoted above; court considering legal question of whether product is "unreasonably dangerous" determines whether recovery is justified).

The problem inherent in *Griggs* is reflected in *Pacheco v. Coats Co., Inc.*, 26 F.3d 418, 421–422 (3d Cir.1994), *reh'g, reh'g in banc denied.* Relying on *Azzarello, Lewis,* and *Griggs,* the Third Circuit termed the initial test as one of risk allocation, adding, "A judicial determination that Pennsylvania social policy allocates the risk away from the manufacturer in a strict product liability case is tantamount to a judicial conclusion that the product is not defective." *Id.* at 422. Although examining the question of whether the user is an intended user in the context of whether the product is defective, the Third Circuit noted that foreseeability is a negligence concept with no place in strict liability law. *Id.*

In a later opinion, the Third Circuit attempted to distinguish more clearly what is meant by "unreasonably dangerous" and "defective condition" for purposes of claims under § 402A as applied under Pennsylvania law. *Surace v. Caterpillar, Inc.*, 111 F.3d 1039 (3d Cir.1997). In so doing, the Third Circuit concentrated on what it referred to as the "*Azzarello* standard," *id.* at 1044, by which it meant the threshold "unreasonably dangerous" or social policy determination. This terminology reflects what appears to be a tendency among courts and litigators to refer to the "unreasonably dangerous" determination as the "*Azzarello* test" and the "defective condition" determination as the "*Lewis* test." *See Surace* at 1045 (citing *Lewis* as standing for "intended use" approach in defining design defect, as opposed to risk-

utility approach). Hereafter, we use the same language.

The Third Circuit clearly delineated the two tests, concluding that a risk-utility analysis is the appropriate standard for the *Azzarello* test and that the Supreme Court of Pennsylvania would adopt such an approach. *Surace* at 1044–1045. It noted that the cases in which a risk-utility analysis was rejected were those in which courts were considering such a standard in the context of defining "defect," i.e. the *Lewis* test. *Surace* at 1045. Of course, at this point, *Griggs* reared its head. The Third Circuit addressed its prior opinion, as well as the district court opinion, as follows:

> In *Griggs v. BIC Corp.,* 786 F.Supp. 1203 (M.D.Pa.1992), the plaintiffs sought to have strict liability imposed, not because the product, a disposable butane lighter, was unsafe for its intended use, but because it was unreasonably dangerous to foreseeable users, i.e., children. The plaintiffs advocated use of the risk-utility approach to design defect, rather than the "intended use" approach, arguing that because it was foreseeable that children would misuse the lighter and it was feasible to design child-proof lighters, on balance, the product was defective. The district court, citing *Hite [v. R.J. Reynolds Tobacco Co.,* 396 Pa.Super. 82, 578 A.2d 417 (1990), *allocatur denied,* 527 Pa. 666, 593 A.2d 842 (1991) (table),] and *Dauphin [Deposit Bank & Trust Co. v. Toyota Motor Corp.,* 408 Pa.Super. 256, 596 A.2d 845 (1991) ], noted that the Pennsylvania courts have rejected the risk-utility approach to design defect cases. *Id.* at 1206–07. The court, however, correctly distinguished between the use of risk-utility as an approach to defining defect and as a method for evaluating a product's 'unreasonable dangerousness' under the rubric of strict products liability. *Id.* at 1207 n. 4.
>
> On appeal, a panel of this Court relied on the Supreme Court's decision in *Lewis* in affirming the district court on this

issue. *Griggs v. BIC Corp.*, 981 F.2d 1429, 1433 n. 6 (3d Cir.1992). In light of the underlying facts of the case, we read the panel's decision in *Griggs* as rejecting the argument that the risk-utility approach to *defining* defect should be used instead of the "intended use" approach; however, to the extent that the panel's decision can be read as rejecting outright the use of a risk-utility analysis as a part of the threshold determination, it is contrary to our decision in *Motter [v. Everest & Jennings, Inc.,* 883 F.2d 1223 (3d Cir.1989), *reh'g denied]*, which, subsequent to the *Lewis* decision, sanctioned this approach, and, therefore, carries no precedential weight. *See O. Hommel Co. v. Ferro,* 659 F.2d 340, 354 (3d Cir.1981) ("[A] panel of this court cannot overrule a prior panel precedent.... To the extent that [the later case] is inconsistent with [the earlier case, the later case] must be deemed without effect." (citation omitted)) [, *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1711, 72 L.Ed.2d 134 (1982) ].

*Surace* at 1045–1046 n. 6 (emphasis added; bracketed citations added, remaining bracketed material in original).

Although not a lengthy analysis of the issues, the *Motter* opinion does summarize the distinction between the issue to be resolved by the court and the issue to be presented to the jury. 883 F.2d 1223. Moreover, it indicates that the social policy issue for the court is to be determined by applying a risk-utility balancing test, *id.,* as indicated in *Surace. Motter* and *Surace* thus are consistent in the *type* of test to be applied, although *Surace* is unique in detailing the precise contours of the test, at least to the extent feasible.

In his brief, Shouey states that no Pennsylvania appellate court has held that the "intended user" limitation applies in cases under § 402A. Plaintiff's Memorandum of Law in Opposition to Zippo's Motion for Summary Judgment at 5. Actually, the Superior Court has so held, and specifically relied on *Griggs* (among other authorities) in doing so. *Riley v. Warren Mfg., Inc.,* 455 Pa.Super. 384, 688 A.2d 221, 228 (Pa.Super.1997). It should be noted, however, that the Superior Court concluded by indicating that the defendant in that case should not be held liable because the product was not unreasonably dangerous, such holding being a matter of law or social policy. *Id.* at 229. *See also Weiner v. American Honda Motor Co., Inc.,* 718 A.2d 305, 309 (Pa.Super.1998) (citing *Riley* for proposition that, when injured person is not intended user using product for intended use, proper under *Azzarello* social policy analysis to find product is not unreasonably dangerous).

Thus, both *Riley* and *Weiner* indicate [7] that the question of whether the user is an intended user is part of the *Azzarello* analysis for unreasonably dangerous, not the *Lewis* analysis for defective product. The reason for this is that it is the conduct of the manufacturer that is at issue, specifically its decision-making process involving a determination that its product would be used in a certain way by certain people. Also, the question of foreseeability is implicated because the test is whether the user in question is a "reasonably obvious unintended user." *Riley* at 228–229 (adopting test of *Klemka v. Bic,* 1996 WL 571753 (E.D.Pa. Oct. 4, 1996)).

From all of this, a number of principles may be gleaned:

(1) The Supreme Court of Pennsylvania intended, in adopting § 402A, to simplify

---

7. We do not mean by "indicate" that this proposition is the holding of *Weiner,* in which the use in question was the placement of a pressurized gas canister into the cargo compartment of a hatchback automobile. The Superior Court concluded that, while transportation of cargo was an intended use, the transportation of this type of cargo was not the sort of risk against which § 402A is intended to protect. *Id.* at 309. That is, the action was at issue, not the actor. Thus, the "intended user" language properly may be viewed as dicta.

those cases in which a plaintiff is injured by a defective product.

(2) The Supreme Court of Pennsylvania did not intend that strict liability would apply in every case in which a plaintiff is injured by a product.

■ (3) The exception to the general rule of strict products liability is a matter of social policy and would include those cases in which the risk posed by the allegedly defective product is outweighed by its utility.

(4) The determination of whether the person injured was an intended user of the product is a part of strict products liability analysis.

■ (5) The question of whether a product is unreasonably dangerous is a legal question for the court which is answered by utilizing the risk-utility test.

■ (6) The question of whether a product is defective is a factual question for the jury.

(7) The court must determine whether the product is unreasonably dangerous before submitting the question of defect to the jury.

■ (8) Any issue implicating such negligence concepts as foreseeability is not proper for submission to the jury in a strict products liability action.

■ (9) Any issue which requires consideration of the conduct of the seller or manufacturer is not proper for submission to the jury in a strict products liability action.

■ (10) The issue of whether a given user was an intended user implicates foreseeability and the conduct of the seller or manufacturer, and therefore is not proper for submission to the jury in a strict products liability action.

(11) The issue of whether a given user was an intended user must be part of the social policy/risk-utility analysis by the court in a strict products liability action.

In other words, the *Surace* court correctly places the question of whether the user was an intended user within the *Azzarello* test and not the *Lewis* test, and leaves lower courts with the problem of a decision which appears to be in error in this respect, *Griggs*. However, reduced to its essence, the holding of *Griggs* is that a seller or manufacturer will not be liable under § 402A if the plaintiff is not an intended user of its product. Thus, whether considered in the context of the *Azzarello* test or the *Lewis* test, the principle is not altered. The *Surace* court appeared to conclude as much when it stated, in discussing *Lewis:*

> We do not minimize the background discussion, and observe that it seems quite correct (as well as consistent with *Azzarello*, for it establishes no more than that the known hazards of products such as cigarettes or alcohol, *see supra* n. 6 or, presumably, cigarette lighters, *see supra* n. 7, do not automatically render their manufacturers or sellers liable on the theory that their utility is outweighed by the risks of their usage).

*Surace* at 1046.[8] Moreover, the Superior Court, to whose opinions we must give due deference, also has concluded that the user must be an intended user, and has done so in the context of *Azzarello* analysis.

Finally, as noted above, the *Surace* court outlined the reasoning to be applied by a court conducting the *Azzarello* test. This includes consideration of a set of factors:

> (1) The usefulness and desirability of the product—its utility to the user and to the public as a whole; (2) The safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury; (3) The availability of a substitute product which would meet the same need and not be as

---

**8.** The footnotes are cited as in the original. It appears from the context that a footnote was omitted during editing of the opinion, and the numbers should be 5 and 6, respectively.

unsafe; (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility; (5) The user's ability to avoid danger by the exercise of care in the use of the product; (6) The user's anticipated awareness of the dangers inherent in the product and the avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instruction; and (7) The feasibility, on the part of the manufacturer, of spreading the loss [by] setting the price of the product or carrying liability insurance.

*Surace* ad 1046 (bracketed material added; quoting *Dambacher v. Mallis,* 336 Pa.Super. 22, 50 n. 5, 485 A.2d 408, 423 n. 5 (1984), *allocatur dismissed,* 508 Pa. 643, 500 A.2d 428 (1985) (per curiam), which in turn cited John Wade, *On the Nature of Strict Tort Liability for Products,* 44 Miss. L.J. 825, 837–838 (1973)).

█ That the user is not an intended user would tend to cause these factors to weigh in favor of the product being found not unreasonably dangerous. For example, it is unlawful for children to smoke cigarettes, so that a cigarette lighter presumably has little or no utility to a child. It cannot be said, then, that the conclusion of the *Griggs* court that, because a child is not an intended user of a lighter, the manufacturer cannot be held liable under § 402A, is inconsistent with analysis under the factors set forth in *Surace.*

We therefore conclude that *Griggs* and *Surace* are not irreconcilable. Rather, the *Griggs* court merely denominated its reasoning as falling within the defect analysis when it is properly applicable in the unreasonably dangerous analysis. This reasoning remains valid, as indicated by the *Riley* court; we also are given a hint of such by the *Surace* court. Because we find that the decisions are reconcilable, we need not undertake the dubious step of holding that

we are not bound by *Griggs,* an opinion of our own Court of Appeals, as suggested by Duck Head and Shouey.

Shouey also cites *Eshbach v. W.T. Grant's and Co.,* 481 F.2d 940 (3d Cir. 1973), in which a two-year-old girl jumped on a riding mower and was injured. The Third Circuit held that the manufacturer had a duty to foresee probable results of a use which reasonably can be anticipated. *Id.* at 943. That opinion predates both *Azzarello* and *Lewis,* particularly with regard to excluding negligence concepts, and therefore is no longer controlling as not reflecting the current state of the law as announced by the Supreme Court of Pennsylvania.

Because *Griggs* is controlling on the issue of whether Zippo may be liable under § 402A, and Zippo may not be found liable (pursuant to *Griggs* ), Zippo's motion for summary judgment will be granted as to Count III of the third party complaint against it.

### (C) Count II—Breach of Warranties

Zippo moves for summary judgment on Count II of the third party complaint based on the lack of evidence that the lighter failed to function properly.[9] We agree: A lighter is purchased for the purpose of producing a flame suitable for lighting a cigarette. There is no indication that the Zippo lighter did anything other than produce a flame, nor is there any indication that the flame produced was not suitable (as for example, by being too large) for lighting a cigarette.

Zippo is entitled to summary judgment on Count II of the third party complaint.

### (D) Count I—Negligence

█ Zippo moves for summary judgment on Count I, the negligence claim, because it owed no duty of care to Duck Head. This argument misses the point in the same way that Zippo's statute of limitations argument misses the point: Zippo

9. The standard for claims of breach of implied warranties of merchantability and fitness for a particular purpose is recited in Section III(B), above.

may be liable to Duck Head by a theory of indemnity, contribution, or other form of third party liability. The basis for third party liability is Zippo's liability or potential liability to Shouey, for which Shouey may have recovered from Duck Head. Thus, the existence or absence of a duty to Duck Head on the part of Zippo is immaterial. Duck Head must prove that Zippo owed a duty to Shouey, not Duck Head.

We also note that the Third Circuit in *Griggs*, although concluding that a seller or manufacturer of a cigarette lighter cannot be held liable in strict products liability, held that such a seller or manufacturer may be held liable in negligence. *Griggs* at 1434–1439. Thus, there is no impediment to this claim such as exists for Count III.

Zippo's motion for summary judgment will be denied as it relates to Count I of the third party complaint.

## *V. CONCLUSION*

Duck Head's motion for summary judgment will be denied. Zippo's motion for summary judgment will be granted as to Counts II and III and denied as to Count I of the third party complaint.